### BESSMAN *vs.* GIRARDEY *et al.*

1. Under section 3839 of the Code, any witness is competent to testify as to his belief in the genuineness or falsity of the signature to an instrument, who will swear that he knows or would recognize the handwriting of the person purporting to have signed.    The sources of his knowledge go entirely to his credit and the weight of his evidence.

2. Where an affidavit was used on a motion for a new trial, weakening the force of the testimony of the witness as used on the trial in answer to interrogatories, and before the second trial the witness died, and her answers to such interrogatories were again introduced, the affidavit was inadmissible for the purpose of showing contradictory statements, and of explaining her testimony.

3. Where, upon the trial of a complicated equity cause, distinct issues of fact are submitted to the jury, and a verdict returned on such submission, a ground of motion for a new trial that the verdict did not cover the issues made by the pleadings, without specifying wherein, is insufficient.

4. There was no relevancy in section 1785 of the Code, given in charge to the jury, to the case as made by the pleadings and evidence.

Equity.    Handwriting.    Evidence.    Witness.    Charge of Court.    New trial.    Before Judge SNEAD.    Richmond Superior Court.    October Term, 1879.

To the report of the facts of this case found in the decision, it is only necessary to add that Mrs. Cook had testified on a former trial, and the same testimony was again introduced on the second trial.    The material point in her testimony was that the Cook receipt had come from her possession, and had been delivered by her to Mrs. Girardey.    Subsequent to the first trial she made an affi-

davit as to the very peculiar circumstances under which the receipt was discovered, explanatory of her testimony. See *Girardey et al. vs. Bessman,* 62 *Ga.,* 654. She died before the second trial, and her affidavit was offered for the purpose of "showing contradictory statements and to explain her testimony." It was rejected by the court, and this ruling constituted the sixth ground of the motion for new trial.

BARNES & CUMMING ; M. P. CARROLL, for plaintiff in error.

JAMES S. & E. B. HOOK ; F. H. MILLER ; S. F. WEBB, for defendants.

SPEER, Justice.

Martha M. Girardey, for herself and minor children, filed her bill in Richmond superior court, against I. P. Girardey, John W. Bessman, A. M. Moore, and Sibley, sheriff of said county.

The bill alleges that, in 1854, Edward Averill, the first husband of Martha M., died, leaving her sole heir ; that in 1855, she intermarried with I. P. Girardey, who, by virtue of his marital rights, became the owner of a lot on Ellis street, a lot on Telfair street, and other property, all about $12,000.00 in value. It is alleged that Girardey sold a portion of said property, and his investment of the proceeds was made in lot 142 Broad street, known as the "Exchange," purchased by Girardey of his brother, as administrator of M. A. Girardey, in 1856. The bill further alleges, that on the eleventh day of April, 1861, Girardey being about to leave for the war, executed a deed of trust to John W. Bessman (a copy being exhibited to the bill), by which he conveyed the whole of his property for the benefit of his wife, during life, with remainder to their children ; that said deed had never been recorded, and that after most diligent search it cannot be found.

It is alleged, further, that in 1867 Girardey sold the lot, 142 Broad street, and purchased with proceeds, to extent of $12,000.00, LaFayette Hall, the price of which was $34,000.00. That in 1869 he purchased the Opera House, paying therefor with proceeds of sale of other property included in the trust deed.

The deeds to LaFayette Hall and Opera House were taken in name of I. P. Girardey.

Further, it is charged that in July, 1872, Girardey executed a mortgage on LaFayette Hall and Opera House to one Andrew M. Moore, Philadelphia, to secure a loan of $27,000 000—said loan was effected by Bessman as agent for Moore, and that Moore, through this agent, had full knowledge of the trust deed; that Moore's mortgage was foreclosed, and a judgment had of foreclosure at April term, 1875; that said property has been levied on and is about to be sold.

The bill charges the insolvency of I. P. Girardey, knowledge by Moore of the trust deed; prays for an injunction to restrain the sale, that Girardey be held to account, that the trust property be traced into the mortgaged property, that said lost trust deed be established, and for general relief, etc.

This bill was amended by setting forth certain bank-stocks and other personal property which it is alleged were included in the trust deed and were subsequently sold and proceeds used in the purchase of "LaFayette Hall and Opera House," and also averring that at the time the mortgage was executed, it was expressly understood between Moore's agent, I. P. Girardey and Martha M. Girardey, said mortgage should also be for securing $19,000.00 of said trust property used in purchase of said mortgaged property, also a legacy of $2,000.00 due M. A. Dougherty, and $1,000.00, another legacy, due Regina M. Girardey; and the prayer was that the mortgage deed might be reformed in accordance with this statement.

I. P. Girardey, the defendant, the husband of one com-

Bessman *vs.* Girardey *et al.*

plainant, and father of the others, answered the bill admitting all the averments in the bill.

Moore in his answer denied Bessman's agency, or any knowledge of any trust deed, or of any such debts.

Bessman in his answer denies any knowledge of any such trust deed whatever. Says, when Girardey entered the army, he was a friend of the family, and offered to advise them until Girardey's return, which occurred in 1862 or 1863. Says, further, that Girardey was indebted to him in June, 1872, about $6,000.00, secured by mortgage on LaFayette Hall, and upon being informed by Girardey that he owed about $27,000 00 secured by liens on his property, he, Girardey, offered to borrow, and did borrow, the amount of A. M. Moore, of Philadelphia, which was applied to the discharge of liens on his property, and utterly denies he acted as Moore's agent. He also denies any agreement that the mortgage was to cover other debts due complainant and others. Says he refused to disburse the money for Moore, to pay off the liens, and same was done by W. A. Walton, Esq.

Subsequently the case as to Moore was transferred to the United States circuit court, and the bill was amended claiming damages of Bessman for his gross negligence in the management and loss of said trust estate.

It charges that while Bessman was acting for Moore, he induced Moore to withhold from the $27,000.00 loaned by him to Girardey on the mortgaged property, $6,000.00 due by Girardey to Bessman, and secured by a previous mortgage on same property; that he received $700.00 from rent of LaFayette Hall and appropriated it to Girardey's individual debt ; that Bessman acted not merely for himself, to secure his own indebtedness, but for his friend Moore, to make a good investment at a large rate of interest. Further, it is charged that LaFayette Hall and Opera House have been sold under the mortgage *fi. fa.* The prayer is for a full accounting by Bessman for all the trust propetty, and for damages for mismanagement and violation of his trust.

Upon the bill, answers, (discovery having been waived) proofs submitted and charge of court, the following issues of facts were submitted *seriatim* by the parties and court, to the jury, who returned the responses therein stated, and upon which the court entered its decree. The questions submitted and responses are as follows :

For the defendant—Is there a sufficiency of evidence upon the whole consideration of the case to satisfy your minds and consciences that I. P. Girardey executed a deed eleventh day of April, 1861, to John W. Bessman, as trustee ; and that J. W. Bessman accepted at the time the office of trustee ? Yes.

Questions propounded by the court :

1. Did I. P. Girardey ever execute a deed of trust to John W. Bessman ? Yes.

2. Who was it for, and what were its terms ? It was for the benefit of Mrs. Girardey and her children, born and to be born.

3. Did John W. Besssman ever accept the trust in writing, or act as trustee under the deed ? Yes.

4. Is the deed lost or not ? The original deed not having been produced to us we suppose it lost.

5. What property was conveyed by the deed ? The house on Broad street, known as the Stelling property, number 142, and the house and lot on Telfair street, as described, between Center and Elbert streets.

6. What disposition was made of the property, and what principal sum was received for it ? That property was sold, and twenty-one thousand dollars obtained from the sale.

7. What was done with the money? The money was used in the purchase of what is known as LaFayette Hall.

8. Did Bessman know of this investment, and did he or not consent to it ? Yes.

9. What became of the property in which the reinvestment was made ? It was mortgaged to Andrew M. Moore.

10. What was the value of this property? Twenty-five thousand dollars.

11. Did Bessman act as agent of Moore or Girardey, in negotiating and effecting the loan by mortgage on the LaFayette Hall and Opera House? Mr. Bessman was acting as the agent of Mr. Moore.

12. Did complainant, Martha Girardey, consent to the execution of this mortgage to Moore, and if so, upon what portion of the property? She consented to the mortgage upon the property except LaFayette Hall.

13. Did Bessman, as a creditor of I. P. Girardey, ever receive from a mortgage of the property, the trust money reinvested in payment of debts due him individually? If so, when and how much? Mr. Bessman received six thousand dollars.

14. Were these individual debts to Bessman for the benefit of the property itself in whole or in part? If so, how much? A portion of the money was for the benefit of the property but how much we have no means of ascertaining.

15. Was Bessman guilty, as trustee, of gross negligence in suffering the mortgage to Moore to be executed under which the LaFayette property was sold? He did not exercise ordinary diligence.

16. How much personal benefit did Bessman derive from the execution of this mortgage from Girardey to Moore? He, Bessman, received six thousand dollars.

17. Who is now owner of the LaFayette Hall, and what interest, legal or equitable, has Bessman in this property? Andrew M. Moore is the present owner of the property, and in it, so far as we know, Mr. Bessman has no interest.

18. What loss has complainant sustained by the gross neglect of Bessman, and how is it to be satisfied—by payment in cash, or judgment against him for the property, so far as he has any right therein? Eighteen thousand dollars, and the amount to be paid in cash or its equivalent.

F. A. WHITLOCK, *Foreman.*

Defendant moved for a new trial on the following grounds:

1. Because said findings, and each of them, are contrary to evidence and the principles of justice and equity.

2. Because each of said findings is decidedly and strongly against the weight of evidence.

3. Because each of said findings is contrary to law.

4. Because each of said findings is contrary to law and evidence.

5. Because the court erred in refusing to allow W. A. Walton, when offered by said defendant for that purpose, to testify that from having examined said defendant's books, kept by the defendant himself as a florist—but without having seen him write except, perhaps, in signing papers, pleas, etc., in this case, he believed the signature to the receipt of December 19th, 1861, was not Bessman's.

6. Because the court erred in rejecting the affidavit of Susan M. Cook, it being shown to the court that said affiant was dead—said affidavit having been used on the motion for new trial, and being offered on the trial for the purpose of showing contradictory statements of said Susan M. Cook, and to explain her testimony.

7. Because the court erred in admitting, over the objection of said defendant, the record of the case of Mary Ann Dougherty *vs.* Isadore P. Girardey *et al.* as evidence for complainants.

8. Because the court erred in admitting over said defendant's objections, the will of Mrs. Fredrick as evidence for complainants.

9. That the verdict or finding of the jury does not cover the issues made by the pleadings.

10. Because the court erred in reading to the jury the following sections of the Code as being applicable to this case: §§1785, 2541, 2326, 2061.

11. Because the court refused to allow the witness, William A. Walton, to answer the following questions

propounded to him by Mr. Cumming, of counsel for this defendant: "Do you know the signature of Mr. Bessman? From your knowledge of his signature, what is your opinion of the signature now exhibited?" referring to the signature of J. W. Bessman, trustee of Mrs. M. Girardey, to the receipt described during the trial as the " Cook receipt," a copy of which is annexed to this motion as part of the same, marked " Exhibit A," the court ob_ serving at the time, "I understand Mr. Walton to state distinctly 'that he never saw Mr. Bessman write,'" and witness responding, "I said I thought I saw him sign the pleadings, but I am not certain about it," and the court then adding, "As to the first question, he has distinctly stated that he never saw him write; at most, it would be nothing but the testimony of Mr. Bessman in another form," thus excluding the answers to the questions. This refusal to permit Mr. Walton to testify being made after Mr. Walton had previously testified, "I had on other occasions reasons to examine these papers," referring to the two receipts described during the trial as the " Cook receipt " and the " Fredrick receipt," copies of which receipts are annexed to this motion as part of the same, marked A and B, " critically myself, in connection with some other writings. Mr. Bessman brought down his book, which he kept as a florist, in which he charged his accounts and indorsed papers, wherein I had an opportunity to see his writing, and I compared these papers and his books—his recognized and admitted handwriting," which testimony thus excluded, in response to said questions, would have been as set out in an affidavit of the said William A. Walton, hereunto annexed as a part of this motion, marked C, and which decision on the ground stated deprived defendant on said trial of testimony on the same point by the following named parties: John A. North, Alpheus C. Bean, Joseph S. Bean, Alma A. Pelot and J. Alma Pelot, all of whom were under subpœna in said case to appear and testify at said trial, and whose

testimony would have been on the same point as set out in the affidavits hereunto affixed as a part of this motion, and marked respectively D, E, F, G, and H.

12. Because the court allowed, yver objection of defendant's counsel, the deed of trust alleged to have been executed by I. P. Girardey to J. W. Bessman, as trustee for Mrs. M. Girardey and her children, and annexed to the bill as an exhibit, to be handed to Mrs. Girardey, while a witness on the stand, by her own counsel, and read by her, and this without having been subjected to any cross-examination whatever, and before she was turned over to be cross-examined.

13. Because the evidence of Olivia Bailey was calculated to influence the findings of the jury, and may have influenced them in said finding, which evidence was not true, as appears from her affidavit annexed.

14. Because the court allowed the answer of I. P. Girardey, over objection of defendant Bessman's counsel, to be read as evidence for complainant against I. P. Girardey.

15. Because the findings of the jury might have been based, and probably were based, on the evidence of Olivia M. Bailey, which evidence was not true, as appears from her affidavit hereunto annexed, marked K. And the said defendant moves further to amend the sixth ground of the original motion by adding after the words, " explain her testimony," the following : " And it further appearing that on the cross-examination by complainant's counsel, the defendant Bessman, then a witness on the stand, assigned his having read over said affidavit as one of the reasons why he could now swear that his signature to the receipt called the Cook receipt, a copy of which is hereto annexed, is a forgery." So that the sixth ground of the original motion when amended shall read as follows :

6. Because the court erred in rejecting the affidavit of Susan M. Cook, it being shown to the court that said affiant was dead, being offered on the trial for the pur-

pose of showing contradictory statements of the said Susan M. Cook, and to explain her testimony; and it further appearing on the cross-examination by defendant's counsel, that the defendant, Bessman, then a witness on the stand, assigned his having read over said affidavit as one of the reasons why he could now swear that his signature to the receipt called the Cook receipt, a copy of which is hereunto annexed, was a forgery.

The court, on argument had, overruled the motion for a new trial on all the grounds therein, to which defendant then and there excepted, and assigns the same as error.

In passing upon the several grounds contained in this motion, we do not deem it necessary for a clear understanding of the points made and passed upon, to attempt to set forth or analyze the volume of evidence submitted by the parties in this suit, and which exceeds three hundred pages of printed matter. To do so would be a vain and unnecessary labor. Suffice it to say, the evidence is not only voluminous, but on the main point in controversy, to-wit, the execution and existence (at one time) of the trust deed, is painfully conflicting. As we have determined, under our view of the law of the case as administered by the court below, to order a rehearing, we do not feel called upon to express any opinion as to the weight or preponderance of the testimony, or as to the equity or justice of the case, as we are not prepared to say that we would be called upon to disturb this verdict were these the only errors complained of, but as the case will be remanded for a rehearing, we forbear to express any further opinion upon these grounds in the motion.

1. The fifth ground in the motion, as amended, by the eleventh—that is, the refusal of the court, on the objections made by counsel for complainants, to allow William A. Walton, Esq., to answer the question propounded by defendants' counsel as to the genuineness of the signature of J. W. Bessman to what is known as the Cook receipt, said signature purporting to be made by Bessman as the

v 66—2

trustee of Mrs. Girardey and her children—under the evidence touching his (Walton's) knowledge of the genuine handwriting of Bessman already given in by him, we think was error.

The general rule is, as we understand it, that any witness may be called to prove handwriting who has by sufficient means acquired a knowledge of the general character of the handwriting of the party as will enable him to swear to *his belief* that the handwriting in question is or is not the handwriting of that person. Starkie, vol. 2., p. 651.

The court in the case of this witness, Mr. Walton, limited the means for the acquisition of this knowledge " to *having seen the party write.*" *All* the authorities recognize at least *two* modes. First, having acquired this knowledge from having seen the party write. Second, from correspondence with the party upon which the witness has acted. 2 Starkie, 652; Greenleaf, 1st vol., 13th ed., p. 577. The rulings upon this subject have been variant in the different states, regulated (in some measure) by the local laws. But *all* have recognized the above two modes of acquiring the knowledge of handwriting, so far as we know. But our Code does not confine or limit the means of acquiring this knowledge even to these modes. It has recognized that in the progress of the age new modes for the acquisition of such knowledge may, from time to time, be discovered, on which human belief may be based.

Section 3839 of Revised Code enacts : "Proof of handwriting may be resorted to in the absence of direct evidence of execution. In such case *any witness* is *competent* to testify as *to his belief* who will swear that he knows or would recognize the handwriting. The *source* of this knowledge is a question for investigation and goes entirely to the *credit and weight of his evidence.*"

Touching the source of his knowledge of the handwriting of Bessman, Walton, whose evidence on this point

was rejected, says " Mr. Bessman brought down his book which he kept as a florist in which he charged his accounts and *indorsed paper*, wherein I had an opportunity to see his writing, and I compared these papers and his books, his *recognized and admitted* handwriting." .Question— "What is your opinion of the genuineness of the signature of Mr. Bessman?"—(the Cook receipt then being before witness) here objection was made. Question by Mr. Miller—"Do I understand you to say that you are familiar with the handwriting of Bessman?" A.—"I said I had not seen him sign his name, but I had seen his handwriting on his book which he brought to my office—his genuine handwriting—and compared those papers (the receipts of Cook & Fredrick) with his genuine handwriting and his genuine signature, his signature to various papers which were recognized to be authentic," (objected to by counsel for complainant). "I may have seen him sign his name to some of these pleadings " (objection renewed). Counsel proposed to ask the following questions of witness : " Do you know the signature of Mr. Bessman— from your knowledge of his signature what is your opinion of the genuineness of the signatures now exhibited ?" These questions were, on objection, repelled by the court on the ground "witness had stated he never had seen him, Bessman, write."

We think this was error; that the questions were competent and legal; that he should have been allowed to answer, and permitted the sources of his knowledge, which he had already given, to go to the jury to affect "the credit and weight of his testimony" in the language of the Code. But it is said that the court allowed *other testimony* on the part of the defendant, showing the receipts to Cook & Fredrick were not the genuine signatures of Bessman. We can only say that the object of this suit was in part to set up and establish a trust deed in which Bessman is alleged to have been appointed in entering the trust, and from which he is claimed to be

liable to complainants. This trust deed is the *foundation stone* of this suit; without it the complainants have no case. To establish the fact that there was such a deed, the complainants introduced in evidence the Cook receipts, purported to be signed by Bessman as trustee for Mrs. G. and her children; also, the Fredrick receipt, purporting to be attested by Bessman as trustee. These were the only pieces of *written* evidence that went to establish the fact that Bessman was trustee. The other evidence was by parol, in which witnesses testify to acts and sayings of Bessman that transpired seventeen years before the trial. In the minds of intelligent jurors, one single piece of testimony in writing by Bessman acknowledging the trust would weigh more than the frail memory of a half dozen witnesses who testify at so late a period from the facts. The production of these receipts against Bessman was of vital moment, and if established as genuine would be strongly conclusive of the fact that he was a trustee. He attacks their genuineness, and sustains it in part by testimony—proposes to sustain it further—legally we think—by the testimony of Mr. Walton, whose intelligence and weight of character would have its influence with the jury. To this testimony, we think, defendant was clearly entitled, and its exclusion under the facts was error.

2. As to the 6th ground—the rejection of the affidavit of Mrs. Cook (as evidence), filed on the first motion for a new trial and she being dead, and which defendant proposed to read to the jury for the purpose of "showing contradictory statements and to explain her testimony." We do not find any error in its exclusion. It was at best simply hearsay, and complainants had no opportunity of cross-examination, and we do not think the statement being sworn to and in the form of an affidavit and the witness dead would relax the rule as to its being hearsay and incompetent. See Note to Phillips on Ev., 1 vol., p. 141. Gray vs. Goodrich, 7 John. Rep., 95, 2 East, 54, do., 63. We see no error in the 7th and 8th grounds of the motion.

3. The 9th ground, that the verdict of the jury does not cover the issues made in the pleadings, we think the ground should have been specific. In looking at the pleadings, we find the deed proposed to be set up, and which all the evidence on the subject went to sustain, was for the use of Mrs. G. *during her life, remainder to her children after her death.* The jury set up a deed *to her and her children*, which is not in conformity either to the pleadings or evidence.

4. As to the 10th ground: We have not been enabled to see either from the record or argument of counsel any relevancy of sect. 1785 of the Code to the case on trial, which is excepted to as having been given in charge by the court to the jury.

We see no error in any of the other remaining grounds in said motion not referred to in this opinion.

While we may regret that it is our duty under all the circumstances of this prolonged and ably contested case, to tax the court and jury with a rehearing on the merits, and especially so as this is the second verdict rendered for the complainants, yet we feel it our duty to do so from the fact that important testimony was excluded from the jury to which the defendant was entitled, and we are not prepared to say its effect might not have led their minds to a different result on one of the main and essential issues submitted for their consideration. Let the judgment of the court below be reversed and a new trial granted.