## 3094. SHAW *v.* CHILES.

1. Where a property owner places it for sale in the hands of a real-estate broker, the latter, in order to claim his commission, must perform the services to be rendered within the time set in the contract, if a given time be set, and, if no time be set, then within a reasonable time, under all the circumstances of the case. If there is no limit as to time, the principal may ordinarily revoke the agreement at any time; but he can not, before a reasonable time has elapsed, revoke it capriciously or captiously, or in such a manner as would be unfair to the broker.

2. The word "able," as used in the Civil Code (1910), § 3587, which provides that "the broker's commissions are earned when, during the agency, he finds a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated by the owner," means financially able.

3. The plaintiff having contended that he made a contract with the defendant on a definitely specified day, when the defendant was engaged in taking up tickets as a railroad conductor on a specified train, it was relevant for the defendant to prove, in corroboration of his own testimony denying the conversation and the making of the contract, that at the time named he was not employed in that service, and to prove by the chief clerk of the auditing department of the railroad that another person was during that period employed as train auditor upon that train, and made daily reports, sending in the tickets from that train, although this witness did not actually see the train auditor engaged in his duties, and though his knowledge of the handwriting of the reports was derived, not from actually having seen the train auditor write, but merely from his business transactions with him.

(a) One person may have knowledge of the handwriting of another from having seen him write, from correspondence between them, or in any other way that would furnish a reliable basis for knowledge of the general character of his handwriting.

DECIDED JUNE 7, 1911.

Complaint; from city court of Valdosta—Judge Cranford. November 25, 1910.

*Denmark & Griffin, Hendricks & Christian,* for plaintiff.

*E. K. Wilcox, J. R. Walker,* for defendant.

POWELL, J. Shaw sued for a sum alleged to be due him for commissions as a real-estate broker. He claimed that the defendant

had listed a farm with him for sale, with the understanding that he might have all he could obtain above $5,000 as commissions, and that, if he could not sell it for more than $5,000, the defendant would pay a commission of 5 per cent. on a sale for that amount. The plaintiff claimed that this agreement was made in August, 1909, and that in December of that year he sold the property for $6,000 to one Mr. Heath, on the terms proposed by the defendant, namely, $2,000 cash and the remainder in two equal deferred payments, and that the defendant refused to consummate the sale, whereby he lost his commission. The defendant denied that he had ever made any such agreement. He contended that the only conversation that he had had with the real-estate agent was in January, when he had merely expressed a willingness to sell, but named no price. By his plea he denied all the allegations of the petition, including the allegation that the proposed purchaser presented by the plaintiff was ready and able to comply with his offer. The jury, under the charge of the court, returned a verdict for the defendant. There are a number of exceptions, but many of them are unimportant, and, even if well taken, would not be sufficient to justify a reversal. Certain of them which present substantial questions will be discussed.

1. The court in effect charged the jury that if they should find that there was an agreement of the nature claimed by the plaintiff to have been made between him and the defendant, the defendant would be bound to pay the commissions, provided that the plaintiff presented a purchaser ready, able, and willing to buy on the terms proposed, and presented him within a reasonable time, if no time limit was stated in the agreement. The objection made to this charge is that it confined the plaintiff to proof of a sale within a reasonable time after the making of the agreement between him and the defendant. The contention is that the agreement remained open indefinitely, unless it was sooner withdrawn. The plaintiff in error relies with some confidence upon the case of Reese v. Pellow, 97 Fed. 167, 38 C. C. A. 94 (before the circuit court of appeals of the sixth circuit, Judges Taft, Lurton, and Swann presiding), in which it is held that "brokers' agencies for the sale of property having no time limit may be terminated at any time by the principal, subject to the ordinary requirements of good faith," and from this they attempt to draw an argument e converso, that

unless it is terminated by some affirmative act of the principal, the
agency continues indefinitely. We do not think that the argument
thus sought to be drawn is sound. When the owner of land has
placed it for sale with a broker, without setting a time limit, he is
bound to exercise such good faith toward his agent as that he will
not captiously withdraw the property for the purpose of defeating
the agent's commissions about to be earned. If a time limit is set,
the agent must complete his work within that limit; and if the par-
ties set no limit, the law sets the limit of reasonable time. After
the expiration of the limit which the parties themselves have set, or
the limit which the law sets in the absence of agreement on their
part, the question of capriciousness in the refusal is not involved.
By this fact are the case of Reese *v.* Pellow, supra, and the cases
on which it is based, including Stitt *v.* Huidekoper, 17 Wall. 384
(21 L. ed. 644), distinguished. It is an almost universal canon of
construction that where a contract confers upon a party the right
to do some act beneficial to himself, or the right to perform in
such a way as will benefit himself, and no time limit is set, and
from the nature of the contract the grant of the privilege is not
of essentially permanent duration, the privilege must be exercised
or performance consummated within a reasonable time.

2. The court, in charging the jury as to the proposition of law
expressed in the Civil Code (1910), § 3587, that "the broker's com-
missions are earned when, during the agency, he finds a purchaser
ready, able, and willing to buy, and who actually offers to buy,
on the terms stipulated by the owner," explained to them that the
word "able" meant financially able. The plaintiff in error excepts
to this, contending that the broker in such a case is not an insurer
of the solvency of the proposed purchaser, and that the ability
referred to is merely ability to make the cash payment required,
and ability to execute the necessary papers evidencing the deferred
payments. Counsel for the plaintiff base this proposition upon
what we think is a misconception of *Odell* v. *Dozier,* 104 *Ga.* 203
(2), (30 S. E. 813); *Fenn* v. *Ware,* 100 *Ga.* 563 (28 S. E. 238);
Moore *v.* Irwin, 89 Ark. 289 (116 S. W. 662, 20 L. R. A. (N. S.)
1168, 131 Am. St. Rep. 97). These cases hold that the broker is
never an insurer of the deferred payments, or of a full per-
formance of the contract, if one be made, unless made so by the
terms of the agency, and if the property owner accepts the pro-

posed sale, the right of the broker to commissions is not defeated by any subsequent failure of the purchaser to perform his contract. But these cases in no wise militate against the proposition that the word "able," as used in the section of the code which has just been quoted (and the code section is merely a codification of a common-law principle, recognized generally throughout the entire country), means financially able. As the Supreme Court of Rhode Island said in Butler v. Baker, 17 R. I. 582 (23 Atl. 1019, 33 Am. St. Rep. 897) : "We find no case which holds that a broker has fulfilled his undertaking by presenting a person as a purchaser who is not financially able to make the purchase." And a number of cases are there cited as authority for the proposition that the proposed purchaser must be financially able to buy. If the broker's principal once accepts the purchaser, he waives the right to question his financial ability, so far as the broker's rights to compensation are concerned. If he has refused the contract, the financial inability of the purchaser is a good defense to the broker's claim of commissions.

3.   The plaintiff contended that he made the agreement, which the defendant denied, upon a train between Tifton and Jacksonville, that the defendant was conductor upon that train, and that the proposition was broached when the defendant, as conductor, came to the plaintiff as a passenger, in order to take up his ticket. The defendant testified that he did not take up tickets on the train on the day named, but that a named train auditor was employed at that time upon that train and took up the tickets.   To corroborate his evidence as to this, he introduced the testimony of the head clerk of the auditing department of the railroad company, who testified that throughout the month involved the train auditor named by the defendant was engaged on the train in question, and that this auditor made return of the tickets to the general office in Macon.   He did not know of his own personal knowledge that the auditor actually performed the duties on the train, or that the reports were in the train auditor's handwriting, except in so far as he knew the auditor's handwriting from a number of similar reports which he had received.   This evidence was objected to on the ground that it was irrelevant and that the witness's knowledge was not such personal knowledge of the facts as to render it admissible in evidence.   We think that the evidence was properly admissible.

Even though this chief clerk did not actually see the train auditor performing his duties, still the fact that he had come in every day with the reports and the tickets was a circumstance of some probative value. The fact that he did not know the auditor's handwriting from having seen him write was no sufficient reason for excluding his testimony as to the signatures to the train reports, as he knew the handwriting through a course of business dealings, and this is one of the methods by which one person may become acquainted with the handwriting of another, and through which he may testify as to the genuineness of the handwriting. *Bessman* v. *Girardey,* 66 *Ga.* 18 (1), 28.

Having carefully examined the testimony, the charge of the court, and the grounds of the motion for new trial, we find no reversible error in the record. *Judgment affirmed.*