33748. REISMAN *v.* MASSEY.

Decided November 9, 1951.

*Saul Blau,* for plaintiff.

SUTTON, C. J. ■ The renewed general demurrer to the amended answer was to the effect that the answer did not present an issuable defense. The petition is based on the listing contract, employing the plaintiff to negotiate the sale of the defendant's business, and on Code § 4-213, which states, "The broker's commissions are earned when, during the agency, he finds a purchaser ready, able, and willing to buy, and who actually offers

to buy on the terms stipulated by the owner." The defense raised in the answer is that the agent violated his duty to the seller by misrepresenting the ability of the buyer to pay, whereby the agent forfeited his right to commissions under Code § 4-212.

"The relationship of principal and agent is fiduciary in character, and imposes upon the parties the duties of exercising toward each other the utmost good faith. Civil Code, § 4030 [Code, § 37-707]. The law implies, as a part of the contract by which every agency arises, that the agent agrees to have and exercise, for and toward his principal, loyalty and absolute good faith; and any breach of this implied contract on his part forfeits his right to commission. [Citations omitted.] If the agent practices upon the principal any deception (whether intentional or not) whereby the principal is misled and damaged and the agent would reap any benefit, the transaction is fraudulent, and the courts will not allow the agent to take or retain the benefit." *Williams* v. *Moore-Gaunt Co.*, 3 *Ga. App.* 756, 759 (60 S. E. 372).

It was alleged in the answer that the agent represented to Mrs. Massey, the defendant, that he had a buyer who was ready, willing and able to buy her business, that he had known Lee, the prospective buyer, for many years, and that he knew Lee had the money to buy the business. It was also alleged that, by the terms of the contract for the sale of the business, entered into on February 26, 1949, Lee was to pay $2500 immediately and then to have possession of the premises; and that Mrs. Massey let Lee have possession of the premises before he paid the money, on his promise to have the money by the end of the day, and on the request and advice of the plaintiff, who stated to the defendant that he was sure she could count on her money as Lee was good for it and that it would be all right for her to sign the contract and turn the premises over to Lee. The answer thus sets out a breach of the agent's duty of exercising the utmost good faith, such as would be a defense, if proved, to the agent's suit for commissions.

The plaintiff broker's contention, that the buyer's alleged refusal to pay immediately was sufficient to put the defendant on notice of the buyer's lack of ability to buy, is without merit.

The financial ability of the buyer was not a fact which the defendant seller had an opportunity to ascertain by simple inspection or otherwise, and the defendant cannot be charged as a matter of law with negligence in relying upon the agent's representations made as if of his own knowledge, especially where the parties are not dealing at arm's length, but are in a confidential relation.

It is contended that the answer shows that the defendant did not rely upon the representations of the plaintiff, her agent, because it is alleged that she insisted upon payment by Lee under the contract from the time the contract was entered into on a Saturday, until the following Wednesday. On the contrary, the fact that Mrs. Massey, the defendant, insisted upon the performance of the contract shows that she relied upon the plaintiff broker's representations in maintaining her expectation that the contract would be consummated.

It is contended finally that the representation was not material, because it was not alleged that the buyer was insolvent. It is alleged, however, that the buyer was represented as able to buy, when he was not. The word "able" as here used means financially able. *Shaw v. Chiles*, 9 *Ga. App.* 460 (2) (71 S. E. 745). "The ability to buy, required in a purchaser obtained by a real-estate broker as a condition to the broker's right to earn a commission for his services, is the [financial] ability to meet the required terms of the sale. It does not mean solvency or ability to respond in damages for a breach of the contract." *Stewart v. Sisk*, 29 *Ga. App.* 17 (1) (114 S. E. 71), citing *Shaw v. Chiles*, supra. Since it is denied in the answer that the prospective buyer was able to buy and alleged that the broker falsely represented that Lee, the buyer, was able to buy to induce the defendant to sign the contract of sale so that she would be liable to the broker under the listing contract, and as it is further alleged that the defendant, relying on the broker's representations, signed the contract to sell and surrendered possession to the buyer, the misrepresentation alleged is plainly a material one. The trial judge did not err in overruling the renewed general demurrer to the answer as amended.

■ Paragraph 4 of the answer admitted some of the facts alleged in paragraph 4 of the petition, and denied the allegation

that Lee was ready, willing and able to buy the business on the stipulated terms. The demurrer to this paragraph of the answer was on the ground that it failed to set out when the defendant discovered that Lee was not able to buy. The defendant's amendment changed the denial clause of paragraph 4 of the answer to a denial of "all the remaining allegations in said paragraph," and the same special demurrer as renewed to the paragraph as amended was properly overruled. By a denial, the defendant forms an issue of fact for submission to the jury, and so long as the answer distinctly admits or denies the facts alleged in the petition, it is in compliance with the Code, §§ 81-305 and 81-306, and is not subject to special demurrer.

The motion to "dismiss" or strike paragraph 7 of the answer, which was added by amendment, on the ground that it was an elaboration of the portion of paragraph 4 of the original answer to which the original special demurrer was sustained, was properly overruled, for while paragraph 7 of the amended answer does contain the denial that the plaintiff produced a buyer who was ready, able and willing to buy and who offered to buy on the terms set out in the agreement, without affirmatively alleging when the defendant discovered this, it also contains allegations of the bad faith and misrepresentations of the plaintiff which were not subject to the criticism of the motion which sought to strike the whole paragraph.

■ Mrs. Massey's testimony on direct examination was, in part, that the plaintiff broker came to her shop on Friday afternoon before the Saturday when the contract was signed and said he thought he had a buyer and someone that would take it. "He said he had known him for a long time, and that he had been in Birmingham; that Bernie Lee had been in Birmingham, and that he was looking for a place to go in business in Atlanta. He said he had known him for many years. With reference to whether or not he had the money to buy it, he said, 'These people have got the money to buy it,' this particular purchaser. I believed those statements when Mr. Reisman told me because I thought it was as much to his advantage. I would not have signed these contracts if I knew those statements were false. I believed the people had the money because of Mr. Reisman's statement. I later found out this boy Lee didn't have

the money. Mr. Reisman told me that after I had signed the contract, that Bernie Lee had lost his job in Birmingham and that his father was going to put him up in business in Atlanta. He told me first that the boy had the money himself."

On cross-examination, the defendant testified to the following additional facts: "I remember making a statement in a previous case as follows: 'After I signed the contract with Mr. Lee, Mr. Reisman told me that Mr. Lee had lost his job in Birmingham and that his father was putting up the money. That was immediately after I had signed the contract, within the next five minutes. Those were his exact words. That was all he said. He disappeared, and I did not see him after that. Later, about twenty minutes after, I turned the keys of the store over to Mr. Lee. I expected him to pay the money, but he did not pay it.' That statement is true, and refers to the same transaction. . . We signed the contract and then he told me that Bernie Lee had lost his job and that his father would go through with the sale."

Lee's father, Sam A. Levey, testified in part as follows: "We were ready to pay the money. As to whether I had it in check or cash, I always carry a blank check, and I had one then, ready. Bernie had sufficient money to buy the business. As to whether I know how much money he had in the bank, I do not know how much he had. I would guess he had about $2500. But that doesn't make any difference. I was going to give them my check. Bernie Lee is now working out of town."

From the evidence in this case, the jury was authorized to find that the plaintiff misrepresented the purchaser's financial ability to consummate the contract to sell. The contention by the plaintiff that the defendant did not rely on the representations of the plaintiff broker because she insisted on the performance of the contract by the purchaser, Lee, for several days after the money was due has already been dealt with in division 1 of this opinion. The plaintiff concedes in his brief that the testimony of the defendant shows that she had no knowledge of her own as to the financial ability of the buyer, except what she received from the plaintiff, whom she had employed to negotiate the sale of her property.

Nor does the evidence show a waiver by the defendant of whether or not the buyer was ready, willing and able, for here

the defendant seller accepted the buyer by entering into a contract with him relying upon the broker's representation that the buyer was able to pay. When the defendant attempted to obtain her money under the executory contract to sell, it was one means by which she might ascertain whether the purchaser was, as represented, ready, willing and able to buy. Neither entering into the contract nor futile attempts to enforce it would be such conduct as would waive the seller's right to defend against the agent's suit for commissions on the grounds of the agent's bad faith, where the enforcement of the contract involves a determination of whether the representation of financial ability is true or not.

The verdict for the defendant was supported by the evidence, and the trial judge did not err in overruling the motion for a new trial.

*Judgment affirmed. Felton and Worrill, JJ., concur.*