## 56182. ANDERSON v. AUTOMATIC SPRINKLER CORPORATION OF AMERICA.

SMITH, Judge.

Appellant was employed as a sales representative by appellee. He voluntarily terminated his employment and sued claiming appellee owed him specific amounts of both deferred and nondeferred incentive compensation under the company's compensation plan, which provided for a base salary and for the two classes of incentive compensation. As to appellant's claim for deferred incentive compensation, the trial court granted appellee's motion for summary judgment; we must reverse that grant because appellee failed to carry its summary judgment burden of showing conclusively that its decision not to pay appellant was a good faith exercise of the discretion it possessed. Appellant's claim for nondeferred incentive compensation remains pending below.

Appellee's compensation plan provided, in part: "Each representative will receive as direct incentive an amount based upon a percentage of actual gross profit on each job after a deduction for general, selling and administrative expenses (GS & A) of 7.5% of the cost of sales on each job (11% on special hazard jobs). The percentages to be applied in computing direct incentives are 8% of the first $25,000 actual gross profit plus 4% of the next $25,000 actual gross profit plus 2% of the actual gross profit in excess of $50,000.

"Fifty percent of the direct incentive will be paid on the basis of estimated gross profit as computed above when the job is first booked. The balance will be paid at the time of the final closeout of that job and will be adjusted for differences between actual and estimated profit.

"After allowance for losses, the maximum amount of direct incentive payable with respect to any one month is limited to 60% of the base salary for that month. Direct incentive in excess of this amount will be carried forward into the next month and applied in satisfying the latter month's direct incentive on a first-in-first-out basis. If, at the end of the last month of the year, there is direct incentive in excess of the 60% limit, such excess will be

divided into four equal annual installments and paid during the first quarter of each of the four years consecutively following the year in which such excess accumulated. All amounts of direct incentive carried forward will be paid in addition to the regular direct incentive received in such years notwithstanding the 60% limitation set forth above . . . The award of any direct incentive is entirely within the discretion of the corporation and nothing contained herein will be construed to the contrary. . . With respect to those representatives whose employment with the corporation is terminated [for reasons other than their disability or retirement], the payment or nonpayment of all or any direct incentive installments previously set aside but unpaid to them at the time of their termination, will rest completely in the absolute and final discretion of the Compensation Committee of the Board of Directors." According to appellant, he read the compensative plan "thoroughly" before signing it. The compensation committee of the board of directors summarily rejected his request for the incentive compensation he believed payable to him for sales he had undisputedly made before terminating his employment. During the three years of employment before he made his decision to terminate, appellant had invariably received the entirety of the incentive compensation due him under the plan for sales he had consummated. Just prior to appellant's resignation, a district manager of appellee and other sales representatives of appellee had informed appellant not to "worry about getting any deferred compensation [after resigning] because no one, to their knowledge, had before, and . . . it would be a virtual impossibility for [him] to receive this deferred compensation." The record before us reveals no basis for the committee's decision.

1. Even in the absence of "an express determination that there is no just reason for delay" (CPA § 54 (b)), the order granting the partial summary judgment is nevertheless appealable. CPA § 56 (h); *Burdell v. Ga. R. Bank &c. Co.*, 124 Ga. App. 828, 830 (186 SE2d 291) (1971).

2. As to the merits, appellant first of all contends that the provisions vesting discretion in the appellee,

quoted above, should be declared void "as against public policy, and as an attempt to oust the court of jurisdiction." We disagree with that contention as we find controlling the decisions of *State Hwy. Dept. v. MacDougald Const. Co.,* 189 Ga. 490 (6 SE2d 570) (1939) and *Jones v. Vulcan Materials Co.,* 112 Ga. App. 402 (145 SE2d 268) (1965), which gave effect to similar contractual provisions. The fact that the earnings plan here sets forth a detailed formula to be used in calculating incentive compensation does not nullify the appellee's discretion to award incentive pay or render the cited decisions inapplicable. None of the provisions in appellee's plan vests in appellee the discretion to resolve *"all questions"* arising under the plan, and therefore we should *not* treat the provisions as against public policy and void, as an attempt to oust the courts of jurisdiction. *State Hwy. Dept. v. MacDougald Const. Co.,* supra, p. 504; cf. *Gettys v. Mack Trucks, Inc.,* 107 Ga. App. 694 (131 SE2d 205) (1963).

However, also raised on the motion for summary judgment was the issue of whether the appellee had in good faith exercised its discretion in deciding, after he had quit, not to pay appellant incentive compensation for sales he had made prior to resigning. Appellee introduced no evidence indicating a reason for its decision. We believe that the appellee thus failed to carry its summary judgment burden of proving conclusively that it was entitled to judgment in its favor. *Sheppard v. Post,* 142 Ga. App. 646 (4) (236 SE2d 680)(1977). Appellee's "failure to exercise an honest judgement" (*State Hwy. Dept. v. MacDougald Const Co.,* supra, p. 494), its "abuse of discretion or failure to use discretion" (*Jones,* supra), if proved, would render nonbinding the appellee's decision not to compensate appellant and would render immaterial the contractual provisions vesting discretion in appellee. *State Hwy. Dept. v. MacDougald Const. Co.,* supra. Analogous to the case before us is Montgomery Ward & Co. v. Reich, 131 Col. 407 (282 P2d 1091)(1955), wherein the Colorado Supreme Court reviewed a similar incentive plan and said, at pp. 411-412: "[C]ounsel for plaintiff [the employer] contends that by his resignation defendant [the employee, who counterclaimed for compensation] forfeited the right to the extra

compensation. We find this to be an appropriate occasion to repeat the time-honored statement that forfeitures are not favored in the law, and to be effectual, must be clear and unequivocal; and further, this contract is to be liberally construed in favor of defendant, because it was drafted by plaintiff. An analytic reading of this contract will not permit any construction other than that extra compensation based on the net profit of the store for the fiscal year is an uncalculated addition to the salary fixed therein. This is made certain by the words 'In addition, for your services as Manager . . . until the end of the fiscal year, you will be eligible for Extra Compensation. . .' In the absence of any failure on the part of defendant to faithfully serve plaintiff under this contract, justice requires that it be determined that he earned the proportionate part of the net profit of the store for the period which he served . . . Cases upon which counsel for plaintiff relies to support denial of this extra compensation to defendant are based upon contracts containing clear and unequivocal forfeiture in the event of voluntary termination of the employment by the employee. The answer to this question is found in the following paragraph of the contract: 'If, during the year, your employment is terminated for any reason, or if you become disabled, or are placed on a leave of absence, both your eligibility for Extra Compensation and the amount thereof, if any, shall be at the discretion of a Bonus Committee.' The bonus committee is the retail manager, the controller, the secretary and the treasurer of the company. It is implied by this provision that the bonus committee will act upon a sound judgment and it is, of course, precluded from arbitrary or oppressive action." In the absence of any evidence conclusively showing a good faith exercise of the discretion appellee possessed, we refuse to condone the earnings forfeiture.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

ARGUED JUNE 29, 1978 — DECIDED SEPTEMBER 7, 1978 — REHEARING DENIED SEPTEMBER 21, 1978 —

*Frank E. Stevenson, Jr., Edward H. Kellogg, Jr.,* for appellant.
*Rogers & Hardin, Richard H. Sinkfield,* for appellee.