## 66661. DeWATERS v. CITY OF ATLANTA.

Pope, Judge.

Plaintiff/appellant brought this action for damages against the City of Atlanta alleging negligence in maintaining a sewer grate "running parallel to the direction of traffic causing a severe and serious hazard to bicyclists. . . ." Following discovery, both parties moved for summary judgment. Plaintiff brings this appeal from the trial court's order granting summary judgment to the City and denying his motion for summary judgment.

The record evidence shows that near midnight on July 13, 1982 plaintiff was injured when the front wheel of the bicycle on which he was riding jammed in an opening in a sewer grate causing him to be

thrown from the bicycle. The accident occurred on Peachtree Street between 10th Street and 14th Street in Atlanta, an area not designated as a bicycle trail or bikeway (see generally OCGA § 12-3-114 (Code Ann. § 43-1505)). Plaintiff, an experienced bicyclist, contends that he was unable to avoid the grate in question due to an automobile approaching from behind him in the same traffic lane. Plaintiff, a visitor in Atlanta, was pleasure-riding and had covered approximately 80 miles in the previous four days, mostly in the vicinity of Piedmont Park. He had not previously ridden on this portion of Peachtree Street. He made a point of observing the sewer grates during his time in Atlanta and did not recall seeing any which were not bicycle safe. Immediately before the accident he was traveling slightly downhill along the curb at "a decent pace," approximately 15 m.p.h. He testified that at this speed it would have taken him 15 to 20 feet to stop, and that when he noticed the grate he was too close to stop and could not swing out to avoid the grate due to the automobile approaching him from behind. The grate he hit stuck out from the curb 1-1/2 to 2 feet and he would have had to have gone slightly beyond that toward the center of the road in order to have avoided the grate. He testified that at this point on Peachtree Street there were three traffic lanes running in the direction he was headed.

The evidence also showed that sewer grates are an integral part of the sewer system. The direction the bars of the grate run (whether parallel or perpendicular to the curb) is determined on the basis of hydraulic efficiency. At a low point in a street, water has no velocity, so the direction of the bars is of no consequence. However, when water is moving downhill and thus has velocity, a parallel configuration is necessary in order to remove the water from the street. If the bars on a grate located on a downhill slope are perpendicular to the curb, the water jumps across the grate rather than into it. Therefore, while a perpendicular configuration would be bicycle safe, it would be hydraulically inefficient.

In recent years due to the advent of the narrower "English" tires, a newly designed sewer grate has been developed that is bicycle safe. The City installs this new grate at all newly located grate positions on its streets. See OCGA § 36-60-5 (Code Ann. § 69-1612). However, the City does not usually replace existing grates with bicycle-safe grates unless either a complaint has been received or requested to do so by a bicycle club. There are between 30,000 and 40,000 sewer grates in the City of Atlanta.

1. In response to plaintiff's allegations of negligence, the City argues that it is immune from liability under the facts in this case. "The construction, installation and maintenance of a sewer-drainage system . . . is a governmental function of the city. [Cits.] 'It seems well

settled in this State that in the negligent performance of its governmental duties a municipal corporation is not liable in damages to one who is injured while the municipality is engaged in the performance of such duties.' [Cits.]" *Foster v. Crowder,* 117 Ga. App. 568, 568-9 (161 SE2d 364) (1968); *Johnson v. City of Atlanta,* 117 Ga. App. 586 (161 SE2d 399) (1968); see OCGA § 36-33-1 (Code Ann. § 69-301). See generally *City of Atlanta v. Trussell,* 21 Ga. App. 340 (1) (94 SE 649) (1917). Nevertheless, "[a] municipality is bound to use ordinary care to keep its public streets and sidewalks, which are open for public use, in a safe condition for travel in the ordinary modes, by night as well as by day, and in case of failure to exercise such care, the city is liable for damages resulting therefrom. [Cits.] Proper construction or reconstruction is within the scope of the city's duty to keep a street, bridge, or sidewalk reasonably safe. [Cits.] 'The streets should be so graded as to render them reasonably safe for travel . . . One object of good streets and roads is to protect against accidents. The street should be reasonably safe for ordinary travel, including such accidents as might, without fault on the part of the traveler, befall him.' [Cits.]

"There have been numerous cases dealing with obstructions in a street resulting from a city's exercise of its governmental functions, such as: an open sewer in the middle of a street [Cit.]; an unguarded fire plug projecting six inches above a sidewalk [Cit.]; a grate over a sidewalk, which was insecurely propped up while a drain was being cleaned [Cit.]; an open eye of a sewer near a sidewalk [Cit.]; a trash-box lid extending over a sidewalk [Cit.]; and unguarded ditches at a slippery intersection. [Cit.] The ruling to be derived from these cases is that, after the exercise of a governmental function has ended, the ministerial duty of keeping streets and sidewalks free from obstructions becomes obligatory, and also that the latter duty includes guarding or warning against the obstructions erected or maintained by a city in the exercise of its governmental functions.

"As stated in *City Council of Augusta v. Tharpe,* [113 Ga. 152, 157 (38 SE 389) (1901)]: 'After all, whether any given obstruction on or near a sidewalk [or street] is dangerous, and whether a failure to remove it (or, we add, to place barriers or warnings about it) would constitute negligence on the part of the city, are questions of fact which the jury must determine.' [Cits.]" *Hodges v. City Council of Augusta,* 90 Ga. App. 306, 309-10 (83 SE2d 36) (1954).

In the present case, the sewer grate was a part of the general drainage and sewerage system of the City of Atlanta and was constructed according to the City's general engineering plans as they existed many years before plaintiff's accident. However, in recent years sewer grates such as the one in question have become unsafe for

bicycle traffic due to changes in the width of the tires on many models of bicycles. Since 1972 the City has been purchasing sewer grates which are bicycle safe. These grates are installed on all new construction projects and are also used to replace existing grates which are no longer functional or about which complaints have been received or replacement requested. However, the City has determined that it is not economically feasible for it to replace all existing sewer grates with new bicycle-safe grates. Yet, "[e]very person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction." OCGA § 40-6-294 (a) (Code Ann. § 68A-1205).

The facts disclose that the City was generally aware that sewer grates which have bars parallel to the curb pose a potentially dangerous obstruction to some bicyclists using city streets. Nevertheless, whether the grate in question constituted a dangerous obstruction to persons using the street in an ordinary manner, as plaintiff was, and whether the City exercised ordinary care to remove the alleged obstruction or to put barriers or warnings near it, are questions of fact which must be resolved by a jury. See *Hodges v. City Council of Augusta,* supra; *Mayor &c. of Buford v. Medley,* 58 Ga. App. 48 (1) (197 SE 494) (1938). See also *Wilson v. City of Atlanta,* 63 Ga. 291 (2) (1879). Accordingly, the trial court erred in granting the City's motion for summary judgment.

2. As to plaintiff's motion for summary judgment on the issue of liability, "[q]uestions of negligence, contributory negligence, cause and proximate cause, whose negligence, what negligence, including lack of care in avoiding the consequences of another's negligence, are, except in plain, palpable and indisputable cases, solely for jury determination." *Myers v. Boleman,* 151 Ga. App. 506, 508 (260 SE2d 359) (1979). The facts recited above are not so "plain, palpable and indisputable" so as to warrant summary judgment in favor of plaintiff as to liability.

One additional issue requires discussion here. OCGA § 36-60-5 (Code Ann. § 69-1612) provides: "After July 1, 1978, each county and municipal corporation shall install all newly located grates upon any public roadway so as to accommodate bicycles traveling on the public road parallel to the lane of travel of vehicles proceeding over such roadways, except that this Code section shall not apply to limited access highways or other streets or roads on which bicycle travel is prohibited." Plaintiff argues that because the subject section of Peachtree Street has been resurfaced and the sewer grates raised accordingly since the enactment of OCGA § 36-60-5 (Code Ann. § 69-1612), the City is liable as a matter of law for failing to install

bicycle-safe grates at these "newly located" grate positions. We do not agree with plaintiff's interpretation of the statute that the grates at issue here were "newly located."

"In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1(a) (Code Ann. § 102-102). "The construction must square with common sense and sound reasoning." *Blalock v. State,* 166 Ga. 465, 470 (143 SE 426) (1928). In the enactment of OCGA § 36-60-5 (Code Ann. § 69-1612) the General Assembly clearly intended that all "newly located" grates on public roadways be bicycle safe. What are "newly located" grates? Words and phrases in statutes are to be given their ordinary and common meaning. See OCGA § 1-3-1(b) (Code Ann. § 102-102). We find the ordinary and common meaning of "newly located" to be as follows, to wit: set or established in a particular spot or location not previously in use. See Webster's Third New International Dictionary 1327 and 1522 (1981). We are buttressed in our view by the preamble to the statute which recites as its purpose the regulation of "the future installation of grates upon any public roadway by counties and municipalities. . . ." Ga. L. 1978, p. 257. See generally *Smith & Co. v. Evans,* 125 Ga. 109, 112 (53 SE 589) (1906). Common sense and sound reasoning dictate against plaintiff's interpretation which would include existing grates which have been adjusted due to street resurfacing.

Based on the evidence of record, the trial court did not err in denying plaintiff's motion for summary judgment.

*Judgment affirmed in part; reversed in part. Quillian, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 28, 1983.

*John Walton Henderson, Jr., L. Prentice Eager III,* for appellant.

*Marva Jones Brooks, Alford J. Dempsey, Jr.,* for appellee.