A89A1839. E. H. CRUMP COMPANY OF GEORGIA, INC. et al.
v. MILLAR. .
(391 SE2d 775)

McMurray, Presiding Judge.

Plaintiff Francis R. Millar brought suit against defendants E. H. Crump Company of Georgia, Inc. ("Crump"), David D. Henritze, individually and as Crump's president, and Gary Shertenlieb, individually and as Crump's senior vice president, seeking damages for breach of contract, fraud, defamation, and tortious interference with contractual relations. With regard to the breach of contract count, plaintiff alleged that Crump was obligated to pay him the amount of $358,994.26, representing compensation earned by plaintiff as an employee of Crump during fiscal year 1987. Defendants answered the complaint, denying any liability to plaintiff. In addition, defendants counterclaimed seeking damages and a permanent injunction on the grounds that plaintiff breached his fiduciary duties and a covenant not to compete "commencing around August of 1987."

Following discovery, plaintiff moved for partial summary judgment upon the breach of contract count of the complaint, contending he was entitled to be paid the compensation earned during fiscal 1987 as a matter of law. Defendants opposed the motion, asserting plaintiff was not entitled to be compensated for his services because, beginning August 4, 1987, and continuing until October 12, 1987, (when plaintiff's employment with Crump ended), plaintiff engaged in conduct in violation of his fiduciary duties as an employee of Crump. The trial court granted plaintiff's summary judgment motion in part, ruling plaintiff was entitled to recover any compensation earned prior to August 4, 1987, whether or not he breached his fiduciary duties after that date. Defendants appeal. *Held*:

1. Plaintiff's motion for damages for frivolous appeal is denied.

2. OCGA § 10-6-31 provides: "An agent who shall have discharged his duty shall be entitled to his commission and all necessary expenses incurred about the business of his principal. If he shall have violated his engagement, he shall be entitled to no commission." Relying on the last sentence of this Code section, defendants take the position that plaintiff forfeited his right to receive any compensation earned during fiscal year 1987 because he breached his fiduciary duty to Crump beginning August 4, 1987. We think this interpretation of OCGA § 10-6-31 is overly broad. By its plain terms, the first sentence of the Code section provides that an agent is entitled to receive compensation when he acts on behalf of his principal. Read in conjunction with the last sentence of the Code section, it is clear that an agent is entitled to compensation during the period of time in which

he acts in a fiduciary manner; and he forfeits compensation only during the period of time in which he fails to act in a fiduciary manner. See *Vinson v. E. W. Buschman Co.*, 172 Ga. App. 306, 310 (3), 311 (323 SE2d 204). It follows that the trial court's award of partial summary judgment to plaintiff was proper.

3. We cannot agree with the conclusion that an issue of fact exists concerning the date of plaintiff's alleged breach of duty. Defendants have not challenged the August 4, 1987, date. In its order granting plaintiff partial summary judgment, the trial court observed that defendants "specifically" alleged the breach occurred on August 4, 1987. Defendants have not asserted on appeal that the trial court erred in choosing the August 4, 1987, date. The sole contention of defendants is that plaintiff is entitled to no commissions because he breached his fiduciary duty after August 4, 1987. Thus, in effect, defendants concede that any breach by plaintiff occurred after August 4, 1987. Besides, we see no evidence whatsoever that plaintiff breached his fiduciary duties prior to that date.

*Judgment affirmed. Carley, C. J., Deen, P. J., Banke, P. J., Birdsong, Pope and Cooper, JJ., concur. Sognier and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

I respectfully dissent because the record does not establish without dispute that no act of unfaithfulness, or omission of faithfulness, occurred prior to August 4, 1987, which is the day before plaintiff gave oral notice to his employer that he was terminating his employment and the day his planned new employer memorialized negotiations to that point in a letter to plaintiff. There is evidence, both in that letter and otherwise, that plaintiff planned on taking two employees of Crump with him and had tentatively agreed that their remuneration for the first year would come out of his income. One of these employees was senior marketing account manager. In addition, there is evidence that within a few days of plaintiff's departure from Crump in mid-October, several sizeable Crump accounts switched their business to plaintiff's new employer. This raises a reasonable inference that they were solicited before that date, and the date of first solicitation is not shown to have been after August 4.

Appellants did not limit their assertions in the response and brief to plaintiff's motion for summary judgment below nor in the enumeration of errors or brief in this court. Because there is evidence to support a finding of disloyalty prior to August 4, and the law allows and even considers the pleadings amended to conform to the evidence, the activities of Millar related to compensability prior to August 4 are germane to the summary judgment ruling. OCGA § 9-11-15 (b); *McDonough Constr. Co. v. McLendon Elec. Co.*, 242 Ga. 510, 514 (250

SE2d 424) (1978).

I do agree that the code section, OCGA § 10-6-31, is applicable. But it alone does not control.

In applying the statutory principles, the contract which governs the relationship between the employer and the employee must be examined. The principle is made a part of every contract of agency. *Williams v. Moore-Gaunt Co.*, 3 Ga. App. 756, 759 (60 SE 372) (1907). But the general principles do not provide the whole answer in every given case.

The several contracts which, taken together as intended, govern the relationship between the parties during the time in question, imply if not express the same principles and add a determinative factor.

The amended compensation schedule which was to govern calendar years 1987 and 1988 provided: "In the event of the Employee's termination of employment for any reason, . . . earnings and expenses and incentive compensation shall be computed as of the end of the month preceding the month in which termination took place, and employee's percentage shall be computed thereon and Employee shall be paid all amounts due under Paragraph 1 no later than seventy-five (75) days after the date of termination. . . ."

Paragraph 1 provided for $150,000 base salary for each of the two years plus, "as incentive compensation, 30 percent of annual Net Commission Income of the Company attributable to accounts produced and serviced by Employee" except that the percentage on certain named accounts would be 18 percent. Annual was designated to mean calendar year, and the compensation was to be paid by the end of February of the following year.

A separate document, the "Agreement and Covenants," contains anti-compete provisions in specific detail, for the period of plaintiff's employment and for two years thereafter. It acknowledges the employer's desire to protect its goodwill and it acknowledges the employer's time and monetary investment in the development of employee's skills in the business. For the period during his employment, employee agreed not to "use or divulge any confidential business information or trade secrets of the Company . . . relating to customers or prospects . . . and includes, but is not limited to, customer and account lists, methods of operation, renewal information, audits, inspection reports, coverages, order information, records of inception or expiration dates of coverages, and personnel data."

The "Employment Contract" itself provides: "Employee agrees to devote full time, attention and best efforts in the faithful discharge of such duties and in the development and furtherance of Employer's business, . . . Employee agrees that, as long as he is employed by Employer, he will not undertake the planning or organizing of any business activity competitive with Employer's . . . business nor engage in

any such activity."

Discharge for cause is specified to include: "if Employee: (i) performs any act intended to inflict damage on the Employer, (ii) violates any provision of this Agreement, . . ."

It also expressly provides: "In order that the Employer shall receive and be able to maintain the benefit of the goodwill which Employer enjoys connected with certain customers and accounts of Employer . . . , Employee agrees that during the term of this Agreement . . . [he will] be bound by all terms and conditions of the Agreement and Covenants Not to Compete. . . ."

Thus the contract package itself specified that the employee must discharge his duties in order to be entitled to his commission. It also, at least impliedly, provided the converse which is expressed in the code section, that he is entitled to no commission if he violates his engagement.

Since plaintiff was required to faithfully discharge his duties, with loyalty solely to this employer, and was subject to termination if he violated any provision of the contract including those related to faithfulness, he could not be entitled to commissions earned from the date the unfaithfulness commenced. Plaintiff has not overcome defendants' evidence that disloyalty began some time prior to August 4. Plaintiff would only be entitled to what he "earned," as that term is contemplated by the contract package, while loyal. "When" or at what point he earned them is not determinable by an application of the statute but is found in the contracts. Even though the code provision uses "when" in its title, that refers to the agent's behavior and not to time of vesting.

Based on the laws governing contract construction, the time up to which plaintiff would be entitled to salary plus commissions would be the time during which the salary and commissions vested (and not divested by such later events as return of premium) up to the date of first breach and regardless of the fact that computation and payment of those commissions and of deferred compensation was to occur months later. Appellants admitted that plaintiff earned his commissions upon clients' payments of the insurance premium.

The contract did not provide that the employee would forfeit earned commissions for the whole year if he violated the terms of the contract by disloyalty or any other breach. Nor does the code provision. It does not impliedly embrace a "relation back" principle, and such would be greater forfeiture than is statutorily expressed. The law abhors forfeiture unless it is plainly intended by the legislature. *Anderson v. Automatic Sprinkler Corp.*, 147 Ga. App. 236, 239 (2) (248 SE2d 507) (1978), rev'd on other grounds 243 Ga. 867 (257 SE2d 283) (1979); see also *Freeman v. Decatur Loan &c. Corp.*, 140 Ga. App. 682, 684 (2) (231 SE2d 409) (1976). Only a forfeiture of the commis-

sions earned while violating the engagement is clearly provided for, as were the cases in *Reisman v. Massey*, 84 Ga. App. 796 (67 SE2d 585) (1951), and *Rood v. Anchors*, 42 Ga. App. 76 (155 SE 65) (1930). If the legislature had meant there would be a forfeiture of commissions earned when the employee was faithfully serving the employer, and up to the commencement of the contract or the engagement, it should have said so. Statutes must be given their plain and logical meaning. See *P. L. A. v. State of Ga.*, 172 Ga. App. 820, 821 (1) (324 SE2d 781) (1984) (non-precedential); see also *DeWaters v. City of Atlanta*, 169 Ga. App. 41, 45 (2) (311 SE2d 232) (1983).

*Williams*, supra at 760, stated that it is the right to the benefit earned on "the transaction" which is forfeited. However, when the agency extends to numbers of transactions completed by the agent, as here, the forfeiture is not limited to transactions in which the disloyalty occurred. *Vinson v. E. W. Buschman Co.*, 172 Ga. App. 306, 310 (3) (323 SE2d 204) (1984), approved as legally correct a jury charge which stated that if the jury found the agents were unfaithful, the agents could not be permitted to retain any compensation received "during the period you find them to have been unfaithful. . . ." Thus, under the code, the unfaithfulness need not have occurred within the framework of the transaction which yielded the commission.

An examination of the previous cases in Georgia on the subject of forfeiture of compensation due to disloyalty of agent may be summarized to provide the answer in this case. When the engagement of the agent is for a single transaction, such as the sale of a parcel of real estate or the sale of a business, the entire commission (the compensation) for the engagement is forfeited, as in *Williams*, supra, *Rood*, supra, and *Reisman*, supra. Where the engagement is an employment contract for a period of time and involving an unspecified number of transactions, such as sales, the forfeiture is not of all of the compensation for the entire period of the engagement but rather "any compensation received (in the sense of earned) . . . during the period (the agent has been) unfaithful to the principal," as in *Vinson*, supra.

Note that in the former, the compensation is indivisible; there is one form of compensation, a commission, earned when the sale is completed; the loyal agent is entitled to no compensation for working long and hard if he achieves no sale. So the disloyal agent forfeits the entire commission even if he was loyal at some periods of time and in some of his activities in connection with efforts on behalf of the principal.

On the other hand, in the latter, the compensation is divisible, such as salary paid for specific progressive periods of time as every week or every month, or commission paid for specific sales. Since the disloyalty is again related to the nature of the employment and the

duties owed, the agent forfeits all of the compensation from the time his disloyalty commenced, whether he was loyal in some duties and with regard to some commission-producing transactions or not. It is the nature of the contract, and its terms, that govern what precisely is forfeited.

In this case involving an employment contract, the alleged disloyalty apparently commenced a substantial period of time after the engagement was undertaken. The compensation was salary, payable monthly, so that forfeiture is easy to compute once the date disloyalty started is determined. It was also annual "incentive compensation, thirty percent (30%) of annual Net Commission Income of the Company attributable to accounts produced and serviced by Employee; . . ."

It may be argued that this *annual* benefit was dependent on faithful performance for that year (or period of time employee worked for employer, assuming loyalty as provided by the contract, which in this case would extend two years beyond termination for certain activities). This construction is strengthened by the designation of this benefit as "incentive compensation." Incentive to do what? To make the particular sale? Or to be loyal and income-producing for a year (or period of time described earlier)? If the latter, commissions could be deemed forfeited if the employee was disloyal during the year.

The decision need not be made in this case, by court or by jury, because the parties had provided a contract answer. If the employment is terminated "for any reason," commissions earned up to the end of the prior month will be paid. This is what was agreed to be paid, even in the face of express provisions regarding loyalty and regarding disloyalty as a cause for termination, and Crump admitted that Millar had "earned" the commissions when the sales were complete; this would be antagonistic to the concept that commissions were not earned until the year's end of faithful service. "Incentive" meant incentive to make that sale.

Since defendant has not conclusively shown that no compensation-forfeiting disloyalty occurred before August 4, and there is affirmative evidence that there were unfaithful acts prior to that date, the court was compelled to deny summary judgment to defendant on this aspect of the case.

DECIDED FEBRUARY 14, 1990 —
REHEARING DENIED MARCH 5, 1990 — ▮▮▮▮▮▮▮▮

*Smith, Gambrell & Russell, David A. Handley, Thomas E. McCarter, Stack & Rogers, Ronald W. Rogers,* for appellant.

*Alembik, Fine & Callner, Bruce W. Callner, Kathy L. Portnoy,*

*Keenan G. Loomis*, for appellee.