**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 9, 2015**

# In the Court of Appeals of Georgia

A15A0361. HELMS & GREENE, LLC v. WILLIS.

ANDREWS, Presiding Judge.

Kirk Willis, an attorney and the former managing member of the Dallas, Texas office of Helms & Greene, LLC, filed an action against Helms & Greene in the trial court to recover incentive and bonus compensation he alleged he was owed following his departure from that law firm. Helms & Greene asserted counterclaims, including a counterclaim for breach of fiduciary duty. In an order granting in part and denying in part the parties' cross motions for summary judgment, the trial court, among other things, granted summary judgment in Willis' favor on the breach of fiduciary duty counterclaim to the extent that it was based on Willis' conduct in marketing his own professional corporation while still employed by Helms & Greene. Helms & Greene appeals, arguing that it did not need to prove that it suffered damage or that the

marketing efforts were lucrative to Willis in order to pursue a breach of fiduciary duty claim based on those marketing efforts. Concluding that an available remedy for breach of fiduciary duty is recovery of compensation the principal paid to the agent during the time the agent breached a fiduciary duty, we reverse.

> On appeal from a grant of summary judgment, we review the evidence de novo, viewing it in the light most favorable to the nonmovant, to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law.

(Footnotes omitted.) *Crippen v. Outback Steakhouse Intl.*, *L.P.* , 321 Ga. App. 167, 167-168 (741 SE2d 280) (2013). So viewed, the record shows that in June 2009, Willis entered into an Employment Agreement (the "Agreement") with Helms & Greene under which Willis was to serve as the Managing Member of Helms & Greene's Dallas office.[1] Under the Agreement, Willis agreed to "perform . . . well and faithfully the duties and responsibilities . . . assigned to [him]," to "devote all of [his] time, energy and skill during regular business hours to the performance of the duties

---

[1] Although the Agreement referred to Willis as a Managing Member, Willis never had an equity interest in Helms & Greene.

of [his] employment," and that, with certain exceptions, he would not engage, during normal business hours or otherwise, "in any other business or professional activity, whether or not such activity is pursued for gain, profit or other pecuniary advantage." The Agreement provided that Willis would receive a base salary of $225,000. He was also entitled to certain incentive compensation. Specifically, Willis was to receive a bonus in the amount of 20 percent of attorney and paralegal fees Helms & Greene collected for work originated by Willis but performed in an office other than the Dallas office. Additionally, he was entitled to a bonus equal to 35 percent of the gross cumulative profit (as defined in the Agreement) generated by the Dallas office. The Agreement permitted either party to terminate it for any reason with 60 days prior written notice.

When Willis was hired, he had a number of valuable relationships with insurance industry clients. As Managing Member of the Dallas office of Helms & Greene, Willis was authorized to pursue new engagements from these clients, manage those relationships, and set billable rates for those clients' matters. Willis was also authorized to pursue new business. According to Willis, he had "complete autonomy of the Dallas office."

Willis testified that Helms & Greene paid him through a professional corporation he formed in 2000, Kirk Willis, P.C. The record includes evidence that Willis attempted to obtain new legal business through his P.C. while he was employed with Helms & Greene.[2] The record shows that in May 2011, Willis, with assistance from his Helms & Greene secretary, submitted a letter of proposal for Kirk Willis, P.C. to provide legal services to the Texas A&M University System. The letter used the address of the Dallas office of Helms & Greene as the address of Kirk Willis, P.C. The letter identified Helms & Greene lawyers – including the firm's Managing Member, Steve Greene – as the attorneys likely to work on matters for the university. Willis maintained that he pursued legal work from Texas A&M University and other government entities through Kirk Willis, P.C. because his P.C. was a minority-owned business with a historically underutilized business certification from the State of Texas. He believed that the certification would give the P.C. a competitive advantage. Willis, however, did not inquire whether anyone at Helms & Greene had experience

_____

[2] It is also undisputed that Willis entered into a contingency fee contract through his P.C. to represent a client in a personal injury case and ultimately obtained a fee of $30,000 in connection with the representation. Willis did not inform Helms & Greene about the representation or share the fee with the firm.

representing colleges or universities or seek advice from anyone within Helms & Greene on how to submit a successful proposal for legal work for a university.

Willis later hired consultants to assist him in responding to requests for proposal but did not submit this expense to Helms & Greene for reimbursement. The consultants assisted in preparing a joint response to a request for proposal by the North Texas Tollway Authority ("NTTA") on behalf of Kirk Willis, P.C. and another Dallas law firm. This response also included biographies of Helms & Greene's attorneys and listed the Helms & Greene address as the address of Kirk Willis, P.C. While Willis maintained that the response was for Helms & Greene's benefit, he did not tell Steve Greene about it. Also beginning in or around January 2012, Willis, with assistance of another consultant and support from his Helms & Greene secretary, attempted to obtain approval for Kirk Willis, P.C. to provide legal services for the General Services Administration ("GSA").

One of Willis' responsibilities at Helms & Greene was to lead a monthly conference call about his marketing efforts for the firm. Willis never disclosed in these calls that he was soliciting business from Texas A&M, the NTTA, or the GSA. The parties do not dispute that Willis' efforts to obtain business from Texas A&M, the NTTA, and the GSA were unsuccessful.

Willis stated in an affidavit that as early as 2010 he became dissatisfied with Helms & Greene's efforts to collect accounts receivable for the Dallas office and for his originations and that in late 2011 and early 2012, this became a "significant problem." In April 2012, Willis received complaints from two clients regarding Helms & Greene's failure to bill promptly, and one of the clients stated that it was withholding referrals for six months as a penalty. It is undisputed that Willis decided at some point that he was going to leave Helms & Greene. Willis maintains that he began making plans to leave in earnest in June 2012. Helms & Green maintains that Willis began making plans at some point before April 1, 2012, when Willis ceased performing billable work for the firm. Willis submitted his formal written resignation to Steve Greene on August 1, 2012 together with letters from a number of clients indicating that they wished to be represented by Willis' new firm and requesting release of their files to Willis. Willis' last day of employment with Helms & Greene was August 20, 2012.[3] When Willis left Helms & Greene, he took many of the

---

[3] In a prior order, the trial court granted Willis' motion for partial summary judgment on his claim to recover compensation under the Agreement, concluding that (1) the terms of the Agreement did not preclude Willis from recovering bonuses he earned at the firm even if the time for paying the bonuses was not triggered until after he left, and (2) that a failure a comply with the 60-day notice provision would not defeat his claim. We affirmed the trial court's decision in an unpublished decision under Court of Appeals Rule 36 in Case No. A13A2314.

6

attorneys and staff from the Helms & Greene Dallas office with him to his new firm, the Willis Law Group.[4]

In its order granting in part and denying in part each party's motion for summary judgment as to Helms & Greene's counterclaims, the trial court granted summary judgment in Willis' favor on Helms & Greene's breach of fiduciary duty counterclaim to the extent that counterclaim was based on Willis' conduct in marketing Kirk Willis, P.C. while employed by Helms & Greene. The trial court stated that Willis breached his fiduciary duty by marketing Kirk Willis, P.C. without Helms & Greene's knowledge. It reasoned, however, that Willis was entitled to summary judgment because Helms & Greene could not show that it incurred damage or that Willis obtained any benefit through his unsuccessful marketing efforts.

1. In its sole enumeration of error, Helms & Greene argues that its claim based on Willis' conduct in marketing Kirk Willis, P.C. should have been allowed to proceed because, whether or not it incurred a loss or Willis received any benefit, it may seek to recover compensation it paid Willis during any period of disloyalty. Willis points out in his appellees' brief that Helms & Greene raised this argument for

---

[4] While the parties submitted other evidence below concerning *inter alia* Willis' conduct and his communications with Helms & Greene prior to his departure, a discussion of that additional evidence is not necessary to this opinion.

7

the first time at the hearing on the parties' cross-motions for summary judgment. Under these circumstances, however, "the pleadings are deemed amended to conform to the evidence presented," and we may consider Helms & Greene's argument. (Citation and punctuation omitted.) *Mazur v. Food Giant*, 183 Ga. App. 453, 454 (2) (359 SE2d 178) (1987); see also *BTL COM Ltd., Co. v. Vachon*, 278 Ga. App. 256, 259, n. 3 (628 SE2d 690) (2006).

2. This Court's precedent establishes that an available remedy for an agent's breach of fiduciary duty is recovery of compensation paid by the principal to the agent during the period of the agent's malfeasance. This principle is rooted in OCGA § 10-6-31, which states that "[a]n agent who shall have discharged his duty shall be entitled to his commission and all necessary expenses incurred about the business of his principal. If he shall have violated his engagement, he shall be entitled to no commission." We cited this statute, among other authority, in *Vinson v. E. W. Buschman Co.*, in concluding that "[i]t is well established in this state . . . as well as in other jurisdictions, that [a] breach of fiduciary duty negates the unfaithful agent's right to any compensation and renders him liable to his principal for his dealings with the latter's property." 172 Ga. App. 306, 309-310 (1) (323 SE2d 204) (1984). In *Vinson*, a district manager and another employee of a manufacturer's district office

8

formed a competing business and operated for it for approximately eight years out of the manufacturer's office and warehouse. We held that the trial court did not err in denying the district manager's motion for directed verdict as to the manufacturer's claim for recovery of all commissions paid and the overhead expense of the district office while the competing enterprise was in existence. Id.; see also *Crippen*, 321 Ga. App. at 173 (4) (acknowledging that breach of fiduciary duty negates unfaithful agent's right to compensation). We also held in *Vinson* that the trial court did not err in instructing the jurors that if they found that the district manager or others were unfaithful agents, "then those among them who were unfaithful may not retain any compensation they received from [the manufacturer] during the period you find them to have been unfaithful to [the manufacturer]." *Vinson*, supra, 172 Ga. App. at 310 (3).

In *E. H. Crump Co. of Ga. v. Millar*, 194 Ga. App. 687 (391 SE2d 775) (1990), an employee filed an action against his former employer and others asserting, among other claims, a breach of contract claim to recover compensation allegedly owed for fiscal year 1987. The defendants opposed the employee's motion for partial summary judgment on the compensation claim, asserting that the employee had engaged in conduct in violation of his fiduciary duties as of August 4, 1987. We affirmed the trial

court's order granting partial summary judgment for the employee for compensation earned prior to the date the alleged breach of fiduciary duty began. Id. at 687-688 (2). Consistent with the jury instruction approved in *Vinson*, we clarified that a proper reading of OCGA § 10-6-31 is that an agent is entitled to compensation for periods of time in which the agent acts in a fiduciary manner and only forfeits compensation during the period of time in which he or she fails to act in a fiduciary manner. Id. Although we were addressing an employer's claimed right to withhold compensation in *Crump*, the same durational limits apply when a principal seeks to recover compensation already paid. See *Keg Technologies v. Laimer*, 436 FSupp2d 1364, 1378 (2006) (after determining that plaintiff was entitled to default judgment on breach of fiduciary duty claim against former employee, district court awarded plaintiff compensation and benefits paid to employee during period in which employee breached fiduciary duty).[5]

---

[5] We note that both the Restatement (Second) of Agency and the Restatement (Third) of Agency recognize the principle that an agent is not entitled to compensation during periods of disloyal service in breach of fiduciary duties. See Restatement (Second) of Agency § 469 (1958) cmt. a. ("An agent who, without the acquiescence of his principal, acts for his own benefit . . . in antagonism to or in competition with the principal in a transaction is not entitled to compensation which otherwise would be due him because of the transaction. This is true even though the conduct of the agent does not harm the principal."); Restatement (Third) Of Agency § 8.01 (2006) cmt. d (2) ( "An agent's breach of fiduciary duty is a basis on which the

In rejecting Helms & Greene's theory of recovery, the trial court stated that the case authority Helms & Greene provided to the trial court after the summary judgment hearing to support its new argument established only that an employee may not retain earnings he or she receives by misappropriating an employer's business. It is true that Helms & Greene's post-hearing submission cited cases for the proposition that one measure of recovery for breach of fiduciary duty is the amount of gross revenues or profits the agent obtained as a result. E.g., *Jennette v. Nat. Community Dev. Svcs.*, 239 Ga. App. 221, 223 (2) (520 SE2d 231) (1999) (principal entitled to recover from agent gross profits agent received by breaching his fiduciary duty and misrepresenting his affiliation with principal for his pecuniary gain). The trial court failed to acknowledge, however, that Helms & Greene also correctly cited *Vinson*, supra, and OCGA § 10-6-31 for the separate proposition that a breach of fiduciary duty negates an unfaithful agent's right to compensation. The trial court erred in this regard and incorrectly relied on Helms & Greene's failure to show that it incurred a loss or Willis obtained a benefit from Willis' efforts to market Kirk Willis, P.C. when

---

agent may be required to forfeit commissions and other compensation paid or payable to the agent during the period of the agent's disloyalty. The availability of forfeiture is not limited to its use as a defense to an agent's claim for compensation.").

it granted summary judgment to Willis on Helms & Greene's claim that Willis breached his fiduciary duty through such conduct.

*Judgment reversed. Miller and Branch, JJ., concur.*