## 52439. FREEMAN v. DECATUR LOAN & FINANCE CORPORATION.

CLARK, Judge.

Should an utterly useless unenforceable utterance cause forfeiture of a legal obligation? The obvious answer in the negative is the principal reason for affirmance of the trial court. Additional reasons are (1) the contract does not violate our Georgia Industrial Loan Act; and (2) the decisions under the Federal Truth-in-Lending Act and its concomitant Regulation Z are not applicable.

Lender sought foreclosure of a bill of sale to secure debt wherein the borrower had conveyed as security for a loan only two items. One was an automobile described in detail as to year, model, brand, type, serial number, and

license tag. The other item was stated only as "1 Refrigerator, White, Philco." After personal service defendant debtor permitted a default judgment to be obtained for a writ of possession which was limited to the automobile. Defendant thereafter undertook to open the default and make a nullity thereof by asserting that the security document contained a clause which voided the transaction as violative of the Georgia Industrial Loan Act. That portion of defendant's motion reads: "The pleadings show that the loan voucher executed in the transaction on which this action is based failed to state that plaintiff's after-acquired property security was limited to property acquired by defendant within ten days of the giving of the security interest."

1. Appellant relies upon the clause in the security document which reads: "The bill of sale to secure debt . . . will cover after acquired household goods and appliances." That language is meaningless in the instant case because the verbiage is too vague and indefinite. It states neither location nor residence address. Thus, it is unenforceable because a description of goods in the foreclosure of security instruments must be sufficiently specific to enable the levying officer to identify the personalty which is to be seized. See *Ellis v. Lynch,* 28 Ga. App. 529 (1) (112 SE 151), and *Rackley v. Burgess,* 39 Ga. App. 15 (145 SE 907). Here the only item described sufficiently is the specified motor vehicle. The description of the other item as "1 Refrigerator, White, Philco" is obviously insufficient.

2. Does the complained of verbiage violate the Georgia Industrial Loan Act? Two basic principles apply: (1) "Forfeitures are not favored, and courts incline against them." *Renfroe v. Colquitt,* 74 Ga. 618 (2a); *Roby v. Newton,* 121 Ga. 679 (49 SE 694); *Sale v. Leachman,* 218 Ga. 834 (131 SE2d 185); and (2) "an intention contrary to the law should not be read into a contract by placing such a construction upon a provision therein, when the provision is just as susceptible of a construction that will show a lawful intention. . ." *Southern Loan Co. v. McDaniel,* 50 Ga. App. 285, 286 (2) (177 SE 834) and cits.; *Bell v. Loosier of Albany, Inc.,* 137 Ga. App. 50, 53 (1) (222 SE2d 839), reversed on other grounds, 237 Ga. 585.

Application of these basic principles that the law abhors a forfeiture and that courts seek to uphold the validity of contracts provide a reason additional to those herein presented for affirmance of the trial court.

3. Moreover, when parties contract, the terms thereof include applicable statutes. "'The laws which exist at the time and place of the making of a contract, enter into and form a part of it' [Cits.]; and the parties must be presumed to have contracted with reference to such laws and their effect on the subject matter. . ." *McKie v. McKie,* 213 Ga. 582, 583 (2) (100 SE2d 580).

Thus, the portion of the instant document dealing with after-acquired goods is subject to the time limitation contained in the Uniform Commercial Code. That provides "No security interest attaches under an after-acquired property clause . . . to consumer goods . . . when given as additional security unless the debtor acquires rights in them within 10 days after the secured party gives value." Code Ann. § 109A-9—204 (4) (b). Despite the general language of the contract, the law gives the debtor the benefit of the 10-day statutory limitation.

As is well known, there is an assumption that everyone knows the law. Therefore, both the lender and the borrower here must be charged with knowledge that the statute limits the after-acquired clause without the necessity of spelling out that law into the document. That is, this would have applied in the instant case if the location[1] of the household items had been stated.

4. Truth-in-Lending decisions from federal courts have no application — not even persuasively — to the instant contract. This is because of the difference between the purposes as well as the language of the federal statute as amplified by Regulation Z and the Georgia Industrial Loan Act and the Comptroller's regulations as Industrial Loan Commissioner thereunder.

Section 226.8 (b) (5) of Regulation Z under the

---

[1] Generally borrowers pledge their household furniture at a specified residence address in obtaining loans upon such security.

national statute (15 USCA § 1601 et seq.) provides in part: "If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest." This regulation is stated as the basis for the decisions rendered in the Northern District of Georgia wherein each jurist followed the precedent of his colleagues. Thus, Chief Judge Newell Edenfield noted that "Regulation Z requires more than simple disclosure of *the fact* that after-acquired property will be subject to a security interest." Davis v. Aetna Finance Co., C.A. No. C74-533A (N. D. Ga., 1974).

Compare the sweeping declaration quoted from Regulation Z whereby this clause was held to be a misleading disclosure, with the pertinent portion of our statute which requires only that the licensee lender deliver to borrower a copy of the loan contract showing inter alia "the type of security of the loan." (Code Ann. § 25-319). As contrasted with the specificity spelled out in Regulation Z, the State Industrial Loan Commissioner's regulations do not enlarge this statutory language but require only "a description of the collateral, if any, securing the consumer's obligations." Official Rules & Regs. of Ga. 120-1-14-.08(2). Both the statutory and regulation requirements have been here satisfied as the borrower's copy reveals "the type of security of the loan" and gives correctly "a description of the collateral."

The history and purposes of the two statutes are dissimilar. The 1968 national statute came about from the rise of consumerism, Congress stating its purpose to be "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 USCA § 1601. The 1955 General Assembly enacted the "Georgia Industrial Loan Act" to provide a source of regulated lending funds after a legislative study commission had determined such need existed for those who had been borrowing at usurious rates from loan sharks, street shylocks and wage-buyers. Its purpose was stated to be "to authorize and provide regulation of the business of making loans of $2,500 or less." Ga. L.

1955, pp. 431, 432. Whereas violaters of Truth-in-Lending pay penalties and attorney fees to the wronged borrowers, the licensed Georgia lender violating the state statute is subject to sanctions imposed by the Industrial Loan Commissioner as well as nullification of the entire transaction and forfeiture thereby of the funds advanced.

It is therefore clear that the federal decisions under Truth-in-Lending are not applicable.

*Judgment affirmed. Bell, C. J., and Stolz, J., concur.*

SUBMITTED JULY 13, 1976 — DECIDED NOVEMBER 4, 1976 — REHEARING DENIED DECEMBER 8, 1976 —

*Richard K. Greenstein,* for appellant.
*William J. Porter,* for appellee.