## A90A1710. BENTLEY v. TSAI.
(401 SE2d 316)

SOGNIER, Chief Judge.

Paul Tsai brought suit against Carol Bentley and Howard Bentley seeking to recover, inter alia, damages for the breach of a noncompetition provision in a contract executed by the parties. After a bench trial, judgment was entered awarding Tsai nothing from Howard Bentley and $7,908 from Carol Bentley. She appeals.

On August 19, 1988, appellant and her husband sold the assets of the business known as the Hair Croppers Beauty Salon (the "beauty salon") to appellee. Paragraph 11 of the agreement they executed provided that "Sellers hereby agree not to compete with Purchaser in any business which competes with the [beauty salon] in any material form [for a set time within a certain geographical location] except for a barber shoppe [sic] located at 1039 Alpharetta Street, Roswell, Georgia, which is presently owned by Seller. It is agreed that this location shall not become a beauty salon. Sellers shall not compete in any Business form . . . or in any manner in which Seller[s] shall receive compensation, either currently or deferred." Appellee presented evidence that before the contract was executed, appellant told most of her clients that she would be working at the barbershop and handed out cards with the barbershop's address on it, and that after appellant left the beauty salon, most if not all of her clientele followed her to the barbershop.

The trial court ruled in favor of appellee on the basis that appellant did compete with appellee by working at the barbershop and performing or providing beauty salon services at the barbershop. We reverse.

First, the plain and unambiguous language of paragraph 11 entitled appellant, while at the barbershop, to compete with appellee's beauty salon so long as the barbershop did not become a beauty salon. The sole issue was thus whether the barbershop "became" a beauty salon. On that issue, the record is devoid of any evidence that the words "barbershop" and "beauty salon" have any technical definition or known and established usage in the hairdressing industry. Uncontroverted evidence was introduced that the barbershop in issue here had both men and women clients prior to the sale of the beauty salon. Appellant refers this court to the definitions of barbering and barbershop in OCGA § 43-7-3 (3) and (5) and beautician, cosmetologist, and beauty salon in OCGA § 43-10-1 (1), (2), and (4). Under these statutes, the operations of both barbershops and beauty salons involve cutting, dressing, singeing, shampooing, dyeing, or permanently waving the hair of a client. Further, these statutes do not restrict the use of barbershops or beauty salons to one specific gender. We note the opinion of the attorney general that a cosmetologist/beautician can perform the above services on a man's hair, but cannot cut or trim a man's beard, services for which only barbers are licensed. 1971 Op. Att'y Gen. No. 71-54. At trial, appellant established that none of the services which under OCGA § 43-10-1 are exclusively within the licenses of cosmetologists/beauticians (e.g., manicures and pedicures) was offered by appellant at the barbershop.

"[W]hen parties contract, the terms thereof include applicable statutes. ' "The laws which exist at the time and place of the making

of a contract, enter into and form a part of it" (Cits.); and the parties must be presumed to have contracted with reference to such laws and their effect on the subject matter. . . [.]' [Cit.]" *Freeman v. Decatur Loan &c. Corp.*, 140 Ga. App. 682, 684 (3) (231 SE2d 409) (1976). However, even if the statutory definitions of barbershop and beauty salon were not foremost in the minds of the parties when they executed paragraph 11, looking to the usual and ordinary meaning of these words, OCGA § 13-2-2 (2); *Claussen v. Aetna Cas. &c. Co.*, 259 Ga. 333, 334 (1) (380 SE2d 686) (1989), as defined in Webster's New International Dictionary (3rd ed.), see generally *Henderson v. Henderson*, 152 Ga. App. 846, 847 (264 SE2d 299) (1979), it appears that beauty shops and beauty parlors (which we take to be synonymous with beauty salons) are establishments "where hairdressing, facials, and manicures are done," while barbershops are establishments where barbers engage in "cutting and dressing hair, shaving and trimming beards, and performing related services." It thus appears that the common, ordinary meanings of these terms are similar to the statutory definitions, in that the major differences in services are the cutting and trimming of beards at barbershops and the performing of manicures at beauty salons.

Although there was some testimony by appellee that he thought barbershops served only men and beauty salons served only women (testimony which the trial court itself discounted), there is no suggestion in the record that this mistake, if there was one, was anything other than unilateral on the part of appellee, and thus does not provide a basis for reforming the contract. OCGA §§ 23-2-22; 23-2-30.

Viewing the evidence adduced at trial in light of these definitions, it appears that although many of appellant's beauty salon clients sought out her services at the barbershop, all the services appellant provided to these clients were services normally available to clients at barbershops, and none of the services was of the type available to clients solely at beauty salons. Appellant thus established uncontrovertedly that her work at the barbershop did not breach the provision in paragraph 11 of the agreement. Accordingly, the trial court erred by finding in favor of appellee and entering judgment against appellant.

*Judgment reversed. McMurray, P. J., and Carley, J., concur.*

DECIDED JANUARY 9, 1991.

*Harris, Phillips & Harris, R. Britt Harris, Jr.*, for appellant.
*Theodore A. Speaker*, for appellee.