## A94A1312. WILLIAMS v. POWELL.

### (447 SE2d 45)

BIRDSONG, Presiding Judge.

Mable L. Williams appeals the grant of summary judgment to Joseph W. Powell II, in her suit against him for usury, including violations of OCGA § 7-4-18.

In June 1990, Williams was facing foreclosure of the first and second mortgages on her home. The principal debt on the first mortgage was $13,782.36. The principal debt on the second mortgage was $3,844.70. In June 1990, she executed a document entitled "Wraparound Mortgage" showing a loan of $22,922.01 by Powell, who is an attorney. A schedule shows the loan was broken down as $13,782.36 for the first mortgage and $9,139.65 additional loan amounts. The additional $9,139.65 lent to Williams included $659.95 to bring current her first mortgage payments, $3,844.70 to pay off her second mortgage, a $125 "transfer fee" by which Powell contends he assumed Williams' obligation on the first mortgage, and $610 for life insurance. The remaining $3,900 is designated as "loan fees" to entities apparently connected to Powell.

The terms of the June 1990 wraparound mortgage extended not only to the June 1990 loan but to all "renewals" thereof, and obligated Powell only to pay to the first mortgagee the principal and interest on the mortgage "as and when required by the terms of said first security deed" (i.e., $169.26 monthly). The terms expressly provided that "with the sole exception of . . . principal and of the interest due thereon [Powell] does not assume any of the obligations" of Williams under the first mortgage, and that Powell's obligation to pay principal and interest "as and when required" "shall be solely for the benefit of [Williams] and shall not be enforceable by any third person or party, specifically not the holder of the first security deed."

The loan which was originally secured by the wraparound mortgage extended only for six months. Williams was required to pay to Powell $347.50 each month from July to November 1990; in December 1990, Williams was required to pay the "final installment of all principal and accrued interest." This required a balloon payment of the "unpaid balance." Williams was unable to make such payment, which Powell claimed was $23,078.34 but which, according to Williams, includes at least $500 unaccounted monies.

To finance the balloon payment of $23,078.34 in December 1990, Williams executed a renewal loan which, as shown by a "federal disclosure statement," obligated Williams to pay an "amount financed" of $24,053.74, at 18.258 percent interest, for a total of $37,382.66. The new principal included the $23,078.34 balloon payment, loan fees, and fees for Powell's law firm.

Thus, six months after Williams appealed to Powell to refinance

and bring current her mortgages totaling $18,287.01, she owed him $37,382.66, and she still remained obligated to the first mortgagee for the balance of her unpaid first mortgage.

The December 1990 renewal note was payable in 35 installments of $373.34, but a letter from Powell required Williams to pay him an additional $33.27 per month for "escrow" fees which Williams says are already charged in the first mortgage payments. Williams says she paid $2,085 on the June 1990 note and $2,842 on the December 1990 note before filing this suit. *Held*:

1. The trial court erred in finding that as part of the June 1990 loan transaction Powell "loaned a principal sum which included $13,782.36 [the balance owed on the first mortgage], payment for which [Powell] assumed responsibility in the wraparound mortgage between the parties dated June 5, 1990."

Powell did not, in the June 1990 loan, lend to Williams or pay on her behalf the $13,782.36 balance on the first mortgage. The "wraparound mortgage" expressly provides that Powell did not assume Williams' obligations under her first mortgage except "constant monthly installments" of principal and interest "as and when required by the terms of said first security deed." The wraparound mortgage was expressly stated as not being for the benefit of a third party including specifically the first mortgagee. The first mortgagee could not enforce Williams' debt against Powell, and Williams remained fully liable to the first mortgagee. The terms of the wraparound mortgage are so uncertain that it cannot readily be ascertained what rights, if any, Williams has under this document. See *Patel v. Gingrey Assoc.*, 196 Ga. App. 203, 206 (395 SE2d 595); *Hughes v. McMichen*, 164 Ga. App. 304, 305 (296 SE2d 233).

What is certain is that Powell did not assume any obligation to Williams or to the first mortgagee to pay off the entire first mortgage *on or by December 1990*, but he charged Williams interest and principal on that full amount as if he had paid it on or by December 1990. The wraparound mortgage allows Powell to hold title to Mable Williams' house as if he had paid the entire first mortgage by December 1990, with the result that in December 1990, Williams was forced to obligate herself to pay Powell a balloon payment, ostensibly including that full amount with interest, which he "refinanced" for her for a total debt of principal and interest of $37,382.66 due in three years.

2. Williams offers sophisticated calculations to show Powell charged usurious interest rates for the June 1990 loan, but these merely complicate the matter. The facts are simple. The June 1990 transaction required Williams to pay eighteen percent interest on the entire first mortgage ($13,782.36) for six months as if Powell had paid that entire mortgage for her, but Powell did not pay that amount to Williams or to the mortgagee during those six months. By December

1990, he had merely made monthly payments of $169.26 to the first mortgagee for six months ($1,015.56). As relates to the first mortgage amount, Williams paid interest on $13,782.36 for six months as if she had been lent that amount, but she effectively got only $1,015.56. The rest she still owed to the first mortgagee, and as of December 1990, she also owed it to Powell, plus 18 percent interest.

Interest is calculated on amounts of which the borrower had use. *Bank of Lumpkin v. Farmers State Bank*, 161 Ga. 801, 813-814 (132 SE 221). As of December 1990, in addition to her monthly payments to Powell of $347.50 for five months ($1,737.50), Williams owed Powell a balloon payment of $23,078.34. That debt was based on a fiction that Powell had paid off the first mortgage, but he did not do so nor was he obligated to do so. When she was obligated to pay this large balloon payment in December 1990, Williams had no money from Powell except $5,239.65 to catch up back payments, pay off the second mortgage and pay life insurance and an alleged transfer fee, and six payments made by Powell on the first mortgage totaling $1,015.56.

The total mount of money of which Williams had use in those six months was thus $6,255.21. However, the balloon payment of $23,078.34 (due in December 1990) represented $6,255.21 in apparently legitimate debt plus *the entirety of the first mortgage and 18 percent interest thereon,* plus $3,900 "loan fees." The $3,900 "loan fees" are considered as interest for the purposes of determining criminal usury. OCGA § 7-4-18; *Norris v. Sigler Daisy Corp.,* 260 Ga. 271 (2) (392 SE2d 242); see *Fleet Finance &c. v. Jones,* 263 Ga. 228, 233-234 (430 SE2d 352).

Mable Williams thus incurred a debt of $24,815.84 ($1,737.50 for five monthly payments made plus $23,078.34 "balloon payment") in six months on the June 1990 loan. This debt and payment ($24,815.84) less the $6,255.21 *actually lent,* amounts to $18,560.63 in interest in six months on the real loan of $6,255.21. This is $3,093.44 interest per month, more than *49.45 percent per month,* or 297 percent in six months on $6,255.21 actually lent.

Powell insists that he has faithfully paid $169.26 per month to the first mortgagee and continues to do so, but this does not mitigate the fact that he extracted usurious interest rates from Williams in the June 1990 loan. We are not concerned how other jurisdictions view wraparound mortgages, for we are not convinced this was a "wraparound mortgage." Powell's payment of these small amounts ($169.26 per month) via a "wraparound mortgage" seems a device to make Williams look like a squatter if she cannot pay him $406.61 per month, or more than $37,000 in three years, which he will eternally renew with a balloon payment in a usurious device which would repeat itself every three years. Williams says Powell was just a "conduit" for payment of the first mortgage, but we are not sure he was

bound by any contract to be even that, since Williams has defaulted on these loans. By paying the $169.26 monthly payments, he is a volunteer making very small payments to justify very great usury.

When from a consideration of the transaction it becomes apparent that there was a corrupt intent to violate the usury laws, the courts will permit no scheme or device, by whatever name, to hide it; any contrivance to evade the usury laws and enable the lender to get more than legal interest will render the transaction usurious, and the courts will look to the actual nature of the transaction and not to the form the parties have given it. *Young v. First Nat. Bank of Covington*, 22 Ga. App. 58, 65-66 (95 SE 381); see *Gunnels v. Atlanta Bar Assn.*, 191 Ga. 366, 381 (12 SE2d 602). The trial court erred in granting summary judgment to Powell on the issue of usury under OCGA § 7-4-18 as to the June 1990 loan.

Moreover, six months after Williams actually borrowed and had use of $6,255.21, she became indebted to Powell for $37,382.66, and she still remained fully obligated to the first mortgagee for the remaining principal and interest after Powell had made the small monthly payments. If Powell *had* paid off the first mortgage by December 1990 (when he claimed Williams owed him more than $23,000 balloon payment as if he had paid the first mortgage with the other second mortgage and other "fees"), the pay-out would have been a much smaller amount since it would include only principal and not unearned interest. By not paying off the first mortgage by December 1990, Powell compelled Williams to continue borrowing larger and larger sums (including interest). We do not include these anomalous and onerous results of the transactions in our calculation of interest for the purposes of this case, however.

3. The December 1990 refinancing note which Williams executed to pay the "balloon payment" due on the June 1990 loan is also usurious. Once there is usury the usury infects any renewal note for the same debt or any part thereof. *McNair v. Gold Kist*, 166 Ga. App. 782, 784 (305 SE2d 478).

Further, the renewal note is usurious in the same way as the June 1990 note was usurious, being based on the quantum fiction that Powell had paid off the entire first mortgage by December 1990. The December 1990 note obligated Williams to pay total principal and interest of $37,382.66, about $400 per month, until December 1993, when another balloon payment of $24,315.76 became due, which doubtless would be similarly financed. Williams would never get out of debt to Powell. When Powell has "voluntarily" paid off Williams' mortgage ($13,782.36 at $169.26 per month in less than seven years from July 1990) and owns her house by having had it transferred to his name, Williams will perpetually owe Powell a "renewal note" of around $37,000 every three years on account of the balloon payment which

she must keep refinancing. The interest on Powell's imaginary payoff of the entire first mortgage by December 1990, for which he continues to extract usurious interest, underlies all these notes. All renewals of the debt merely escalate the usury to a point so unconscionable that it becomes more than usury. The record indicates Powell has made other loans involving real estate.

*Judgment reversed. Senior Appellate Judge Harold R. Banke concurs. Blackburn, J., concurs in judgment only.*

### ON MOTION FOR RECONSIDERATION.

Powell insists that because he pays $169.26 per month on Williams' first mortgage, he properly charged interest on the entire first mortgage amount ($13,782.36) from June 1990, and properly made her repay him $23,078.34 in December 1990, financed with a note for $37,382.66. His calculations showing that the interest is proper when figured on the original term of the first mortgage are misleading, for in fact he charged her interest as if he paid the mortgage off in June 1990. That he obligated himself to Williams only to pay mortgage payments "as and when" due and did not obligate himself to the mortgagee does not justify the deal; it makes it unconscionable. Williams could have borrowed $4,504.65 to pay the second mortgage and arrearage and paid $169.26 per month herself; instead, based on the fiction that he paid off the mortgage in June 1990, she is in debt to Powell for $37,382.66 *and* is liable to the first mortgagee. This is a bargain " 'no sane man not acting under a delusion would make and . . . no honest man would take advantage of.' " *R. L. Kimsey Cotton Co. v. Ferguson*, 233 Ga. 962, 966 (4) (214 SE2d 360).

To convince us that his continuing payments of $169.26 per month justify the usury which was complete in December 1990, Powell says we found "that after paying off the first mortgage [Williams] would still owe in excess of $24,000." This is an incorrect representation by Powell. He contends the first mortgage was "included in the amounts financed"; of course this is true, and that is the whole problem, for though he charged her interest on the whole first mortgage amount, he did not pay if off. He says her obligation was "the same as if he had paid off the first mortgage in full in June of 1990, and simply stepped into the shoes of the first mortgagor," but that is the problem, for he did not pay off the first mortgage in June 1990 and could not step into her shoes.

Powell now says the December 1990 debt *"in excess of"* the $23,078.34 balloon payment was "attributable to the first mortgage." He thus takes the position that *none* of the June 1990 loan amount was attributable to the first mortgage. This position lacks substantial justification; he could not reasonably believe a court would accept it

(OCGA § 9-15-14 (a) and (b)), as the loan document shows on its face that $13,782.36 of the June 1990 loan was attributed to the first mortgage. Surely he does not contend that document was a sham. Since he had paid only $6,255.21 on her behalf, he must explain to a jury why she had to repay him $23,078.34 in December 1990, which forced her to sign a note to him for $37,382.66. He cannot keep saying with any justification (see OCGA § 9-15-14 (a) and (b)) that for consideration of $6,255.21 paid by him, she signed a note for $37,382.66 in December 1990 requiring her to pay him $406.61 per month and giving him the privilege of paying $169.26 per month in the future on her mortgage while she remains bound to the mortgagee.

*Motion for reconsideration denied.*

DECIDED JUNE 21, 1994 —
RECONSIDERATION DENIED JULY 28, 1994 — ▬▬▬▬

*Paul E. Kauffmann, Carmen L. Toussignant, Lisa J. Krisher, Phyllis J. Holmen,* for appellant.

*Denney, Pease, Allison, Kirk & Lomax, Allen C. Levi,* for appellee.