A03A1762. USA PAYDAY CASH ADVANCE CENTERS et al. v. OXENDINE.

(585 SE2d 924)

ELDRIDGE, Judge.

USA Payday Cash Advance Centers, American Cash Advance, Inc., EZ Credit, Inc., Fast Cash 'Til Payday, Inc., Great American Cash Advance, Inc., Great American Credit, Inc., Monday 'Til Payday, Inc., USA Payday Advance, Inc., USA Payday Cash Advance Center No. 8, Inc., USA Payday Cash Advance Center No. 9, Inc., USA Payday Cash Advance Center No. 10, Inc., USA Payday Cash Advance Center No. 11, Inc., USA Payday Cash Advance Center No. 12, Inc., USA Payday Cash Advance Center No. 13, Inc., and USA Payday Cash Advance Center No. 14, Inc. brought a declaratory judgment action against John W. Oxendine, individually and in his official capacity as Industrial Loan Commissioner, in Fulton Superior Court to determine that the Industrial Loan Commissioner lacks jurisdiction over its business practices as service provider for and involved with County Bank of Rehobeth Beach, a Delaware state chartered bank, which is subject to regulation under the Federal Deposit Insurance Act. However, the service provider contract with County Bank was never introduced into evidence so that the merits of the declaratory judgment action could not be reached by the trial court even if there had been an exhaustion of administrative remedies by USA Payday Cash Advance Centers. Oxendine moved for summary judgment for plaintiffs' failure to exhaust plaintiffs' administrative remedies before the Industrial Loan Commissioner; the

motion for summary judgment was granted by the trial court for Oxendine. Finding no error, we affirm.

In July 2002, the Commissioner authorized an examination of the "payday loan" activities of USA Payday Cash Advance Centers. As a result of the examination, an administrative "show cause" order issued, and the plaintiffs were among the parties named in the order. After the hearing on October 11, 2002, the Commissioner found that the plaintiffs were in violation of the Industrial Loan Act in making loans without an industrial loan license and in making false and deceptive advertisements of loans; the Commissioner commanded them to cease and desist from making loans "except as permitted under the Georgia Industrial Loan Act." Plaintiffs were charging an annual interest rate of 650 percent. On October 22, 2002, the superior court denied plaintiffs' appeal of the order. On December 2, 2002, plaintiffs dismissed that appeal.

On December 3, 2002, plaintiffs filed this declaratory judgment action and alleged that they no longer made the loans but that, as "service providers" for County Bank, the loans were now made by County Bank through them. November 13, 2002, was the effective date for such new business procedure to begin. Plaintiffs claimed an exemption from the Georgia Industrial Loan Act as agents for the out-of-state bank. However, such provider agreement, that was alleged in the verified pleadings, was never put into evidence.

At the time that the declaratory judgment action was brought, the Commissioner had not decided whether or not to open an investigation into plaintiffs' new business arrangement with County Bank, because the Commissioner had no facts about the new arrangement and loans and had taken no position in regard to the new procedure.

The Commissioner moved for summary judgment on the grounds that no "actual or justiciable controversy" existed with regard to plaintiffs' new arrangement with County Bank and that there had been no ruling sought on plaintiffs' new arrangement by the Commissioner pursuant to his regulations permitting requests for declaratory rulings. Therefore, plaintiffs failed to exhaust their administrative remedies prior to seeking judicial action.

Under OCGA § 7-3-1 et seq., the Georgia Industrial Loan Act, loans under $3,000 or less come within the ambit of the Act. "A payday loan is a loan of short duration, typically two weeks, at an astronomical annual interest rate." *Smith v. Steinkamp*, 318 F3d 775-776 (7th Cir. 2003). Payday loans are the current version of "salary buying" or "wage buying." See *Gunnels v. Atlanta Bar Assn.*, 191 Ga. 366, 381 (3) (12 SE2d 602) (1940); *Hinton v. Mack Purchasing Co.*, 41 Ga. App. 823, 826 (155 SE 78) (1930). The fees, charges, and interest on a payday loan are between 15 percent and 30 percent of the principal for a two-week loan, constituting a pretext for usury. *Cashback Cata-*

*log Sales v. Price*, 102 FSupp.2d 1375, 1380 (S.D. Ga. 2000); see also *Greenberg v. Commonwealth*, 255 Va. 594 (499 SE2d 266) (1998); *White v. Check Holders, Inc.*, 996 SW2d 496 (Ky. 1999). Since the Georgia Industrial Loan Act was enacted to "define and prevent usury"[1] and to provide a source of regulated funds "for those who had been borrowing at usurious rates from loan sharks, street shylocks and wage-buyers[,]"[2] then such financial transactions come within the jurisdiction of the Act. Therefore, the Industrial Loan Commissioner has jurisdiction over "wage-buyers." OCGA § 7-3-1 et seq.; 1954-56 Op. Atty. Gen. pp. 385-386. If the maximum interest rate is over the limit set by OCGA § 7-3-14 of ten percent or the lender fails to hold an industrial license issued by the Commissioner, then "payday loans" violate the Georgia Industrial Loan Act. See 2002 Op. Atty. Gen. No. 2002-3.

In an attempt to circumvent state usury laws, some payday lenders have contracted with federally chartered banks or state chartered banks insured by the FDIC to take advantage of federal banking laws that allow such banks to make loans across state lines without regard to that state's interest and usury laws in "rent-a-charter" or "rent-a-bank" contracts. See *Colorado v. ACE Cash Express*, 188 FSupp.2d 1282, 1285-1286 (D. Colo. 2002); *Long v. ACE Cash Express*, 2001 U. S. Dist. LEXIS 24617 (M.D. Fla. 2001); *Goleta Nat. Bank v. Lingerfelt*, 211 FSupp.2d 711 (E.D. N.C. 2002). Whether this has occurred in this case and whether it is legitimate or a mere subterfuge intended to circumvent Georgia usury laws cannot be reached in this case, because the plaintiffs failed to exhaust administrative remedies and to put the agreement with County Bank into evidence.

Under the separation of powers under the Georgia Constitution, the judicial branch lacks jurisdiction to deal with an executive branch function until there has been an exhaustion of administrative remedies, i.e., the executive branch has no further remedy. The specific legislative empowerment for judicial review of executive action is strictly followed. *Perkins v. Dept. of Med. Assistance*, 252 Ga. App. 35, 36-38 (1) (555 SE2d 500) (2001). The rationale is that "resort to the administrative process will permit the agency to apply its expertise, protect the agency's autonomy, allow a more efficient resolution, and result in the uniform application of matters within the agency's jurisdiction." *Cerulean Cos. v. Tiller*, 271 Ga. 65, 67 (1) (516 SE2d 522) (1999). A plaintiff "is prohibited from doing by indirection that which it is prohibited from doing directly, i.e., bypassing the exhaus-

---

[1] *Securities Investment Co. v. Pearson*, 111 Ga. App. 761, 762 (143 SE2d 36) (1965).
[2] *Freeman v. Decatur Loan &c. Corp.*, 140 Ga. App. 682, 685 (231 SE2d 409) (1976).

tion of administrative appeals." (Citations omitted.) *Perkins v. Dept. of Med. Assistance,* supra at 38.

> Long-standing Georgia law requires that a party aggrieved by a state agency's decision must raise all issues before that agency and exhaust available administrative remedies before seeking any judicial review of the agency's decision. As long as there is an effective and available administrative remedy, a party is required to pursue that remedy before seeking equitable relief in superior court.

*Cerulean Cos. v. Tiller,* supra at 66 (1). Therefore,

> [a]n action for declaratory judgment will not be entertained where the rights of the parties have already accrued and the plaintiff faces no risk of taking future undirected action. Where a statute provides a party with a means of review by an administrative agency, such procedure is generally an adequate remedy at law so as to preclude the grant of equitable relief.

(Citations omitted.) *Brogdon v. State Bd. of Veterinary Medicine,* 244 Ga. 780, 781 (262 SE2d 56) (1979); accord *George v. Dept. of Natural Resources,* 250 Ga. 491, 493 (299 SE2d 556) (1983). When an adequate administrative remedy exists that has not been taken, dismissal of any declaratory judgment or equitable action is appropriate. *Wallace v. State Bar of Ga.,* 268 Ga. 166, 167-168 (2) (486 SE2d 165) (1997); accord *George v. Dept. of Natural Resources,* supra at 492.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED AUGUST 1, 2003 — ▉▉▉▉▉▉▉▉

*Troutman Sanders, William M. Droze, David M. Green,* for appellants.

*Thurbert E. Baker, Attorney General, Sidney R. Barrett, Jr., Isaac Byrd, Senior Assistant Attorneys General, Samantha M. Rein, Assistant Attorney General,* for appellee.