A03A2356, A03A2357. BANKWEST, INC. et al. v. OXENDINE; and vice versa.
(598 SE2d 343)

PHIPPS, Judge.

The first of these companion cases (Case No. A03A2356) involves the issue of whether the trial court properly held that Georgia's Industrial Loan Commissioner has the authority to investigate a business involved in making loans to Georgia citizens to determine if that business is violating the Georgia Industrial Loan Act (GILA) or whether the court should have held that the business is exempt from the Commissioner's investigative reach because of its affiliation with a federally regulated bank. In the second case (Case No. A03A2357), the issue is whether the trial court properly ordered that certain documents submitted in connection with motions for summary judgment be filed under seal. For reasons that follow, we affirm in Case No. A03A2356 and reverse in Case No. A03A2357. We remand the second case for further proceedings.

BankWest, Inc. is a federally insured state bank chartered and located in South Dakota. BankWest and Advance America, Cash Advance Centers of Georgia, Inc. make small, short-term consumer loans to Georgia citizens. Because the maturity date of these loans is usually set to coincide with the borrower's next payday, the loans are often called "payday loans." The relationship between BankWest and Advance America is outlined in their Marketing and Servicing Agreement (the M&S Agreement).

In July 2002, the Commissioner authorized an investigation into Advance America's activities in Georgia to determine if the company was in compliance with GILA. BankWest was not a target of the investigation. When the Commissioner's agents arrived at Advance America's Macon office, they were initially provided with a few documents, but were later denied access to any files or documents related to loans made by BankWest through Advance America. According to one of the investigators, the documents and information gathered showed that "payday loans" were being made from Advance America's offices at an annual interest rate of 443.21 percent.

In August 2002, BankWest and Advance America filed a declaratory judgment action, seeking a declaration that the Commissioner's investigation interfered with their rights to be free from investigation, supervision or regulation by a state official having no authority

or jurisdiction over them or over loans made by BankWest to Georgia borrowers. After the action was filed, the Commissioner continued the investigation and issued administrative subpoenas to BankWest and Advance America, seeking documents and testimony. The Commissioner also asserted a counterclaim in the declaratory judgment action, seeking enforcement of the subpoenas and cooperation in his examination of Advance America. BankWest and Advance America moved to quash the subpoenas.

The Commissioner then moved for summary judgment on all claims raised in the complaint and on his counterclaim. After obtaining a protective order allowing the M&S Agreement and certain other documents to be filed under seal, which was opposed by the Commissioner, BankWest and Advance America also filed a motion for summary judgment.

In February 2003, the superior court granted the Commissioner's motion for summary judgment, dismissed the declaratory judgment action and ordered BankWest and Advance America to comply with the Commissioner's subpoenas. In Case No. A03A2356, Bank-West and Advance America challenge all of these actions. In its order, the trial court had stated that the protective order would remain in effect until further order of the court. In Case No. A03A2357, the Commissioner appeals that ruling and the trial court's initial entry of the protective order.

## Case No. A03A2356

1. BankWest and Advance America claim that the trial court erred by granting the Commissioner's motion for summary judgment. They argue that OCGA § 7-3-22 (a) (2), which allows the Commissioner to examine the records of "[a]ny person who advertises for, solicits, or holds himself out as willing to make loans in amounts of $3,000.00 or less," does not apply to them because, pursuant to OCGA § 7-3-6, banks and their agents are expressly excluded from regulation under GILA and exempt from its provisions.

We review the grant or denial of a motion for summary judgment under a de novo standard of review.[1] We consider the evidence with all reasonable inferences therefrom in favor of the party opposing the motion for summary judgment.[2]

The purpose of GILA is "to define and prevent usury."[3] It was enacted to provide a source of regulated loans "for those who had been

[1] *Smith v. Chandler*, 256 Ga. App. 440 (568 SE2d 592) (2002).

[2] Id.

[3] *Securities Investment Co. v. Pearson*, 111 Ga. App. 761, 762 (143 SE2d 36) (1965).

borrowing at usurious [interest] rates from loan sharks, street shylocks and wage-buyers."[4] GILA applies to all "persons," defined as "individuals, copartnerships, associations, corporations, and all other legal and commercial entities,"[5] engaged in the business of making loans in amounts of $3,000 or less, unless such persons are expressly exempted.[6] State or federally chartered banks are excluded from regulation under GILA and exempted from the operation of its provisions.[7]

To discover violations of GILA, the Commissioner or his representative may examine the books, accounts and records of any person who "advertises for, solicits, or holds himself out as willing to make loans in amounts of $3,000.00 or less"[8] or any person he has reason to believe is violating the act.[9] The Commissioner has the authority to subpoena witnesses and documents, conduct hearings and take testimony under oath when conducting an examination.[10]

Advance America is admittedly engaged in the business of making loans to Georgia citizens in amounts of $3,000 or less and does not have an industrial loan license, which is required for all persons to whom GILA applies.[11] Thus, it appears that Advance America is a proper target for examination under OCGA § 7-3-22. But Advance America argues that BankWest is the real lender and that because BankWest and Advance America, as BankWest's agent, are operating under the authority of federal banking law, OCGA § 7-3-6 exempts them from regulation or examination by the Commissioner.

Thus, the issue is whether OCGA § 7-3-22 gives the Commissioner the authority to examine Advance America or whether OCGA § 7-3-6 precludes such an examination. When construing a statute, we must "seek to make all parts of the statute harmonize and to give a sensible and intelligent effect to each part, presuming that the legislature intended all parts to have meaning."[12] Construing the statute in this manner, we conclude that OCGA § 7-3-6 does not preclude the Commissioner's investigation and that the trial court properly granted his motion for summary judgment. The limiting phrase "except those persons and loans expressly exempted by the

---

[4] *Freeman v. Decatur Loan & Finance Corp.*, 140 Ga. App. 682, 685 (4) (231 SE2d 409) (1976).

[5] OCGA § 7-3-3 (5).

[6] OCGA § 7-3-4.

[7] See OCGA § 7-3-6; 1979 Op. Atty. Gen. No. 79-33.

[8] OCGA § 7-3-22 (a) (2).

[9] OCGA § 7-3-22 (a) (3).

[10] OCGA § 7-3-22 (b).

[11] OCGA § 7-3-8.

[12] (Citation omitted.) *Padgett v. City of Moultrie*, 229 Ga. App. 500, 502 (1) (494 SE2d 299) (1997).

terms of this [statute]" or similar language is used several times in GILA,[13] but is not used in OCGA § 7-3-22. Instead, OCGA § 7-3-22 allows the Commissioner to investigate "*any* person" he has reason to believe is violating GILA. The omission of any reference to "persons not exempted" or similar language in OCGA § 7-3-22

> invites the application of the venerable principle of statutory construction *expressio unius est exclusio alterius*: the express mention of one thing implies the exclusion of another; or the similar maxim more usually applied to statutes, *expressum facit cessare tacitum*, which means that if some things (of many) are expressly mentioned, the inference is stronger that those omitted are intended to be excluded than if none at all had been mentioned.[14]

We regard the omission of any such reference in OCGA § 7-3-22 as deliberate.[15]

By reaching the conclusion that the Commissioner has the authority to continue his investigation of Advance America, we are not holding that the Commissioner has the authority to regulate Advance America or BankWest. We recognize a distinction between the Commissioner's investigative powers and his enforcement powers and find that he must be allowed to continue his investigation to determine if Advance America's activities fall within his regulatory authority.[16]

We also note that there is support for the Commissioner's decision to investigate Advance America and its relationship with Bank-West. A "payday loan" has been defined as "a loan of short duration, typically two weeks, at an astronomical annual interest rate."[17]

> In an attempt to circumvent state usury laws, some payday lenders have contracted with federally chartered banks or state chartered banks insured by the FDIC to take advantage of federal banking laws that allow such banks to make loans across state lines without regard to that state's interest and usury laws in "rent-a-charter" or "rent-a-bank" contracts.[18]

---

[13] See OCGA §§ 7-3-2; 7-3-4; 7-3-5; 7-3-8.

[14] (Citation and punctuation omitted.) *Dept. of Human Resources v. Hutchinson*, 217 Ga. App. 70, 72 (1) (456 SE2d 642) (1995).

[15] See id.

[16] See *Securities & Exchange Comm. v. Brigadoon Scotch Distrib. Co.*, 480 F2d 1047 (2nd Cir. 1973).

[17] (Citation and punctuation omitted.) *USA Payday Cash Advance Centers v. Oxendine*, 262

Whether this is an appropriate description of the relationship between BankWest and Advance America in Georgia and whether BankWest is the real lender or Advance America is the de facto lender form the basis for the Commissioner's investigation.[19]

Relying on OCGA § 7-4-13,[20] Advance America and BankWest argue that the choice of law provision in their M&S Agreement controls and that therefore the usury statute in South Dakota, not Georgia, would apply. We disagree. The parties to a private contract who admittedly make loans to Georgia residents cannot, by virtue of a choice of law provision, exempt themselves from investigation for potential violations of Georgia's usury laws.

The terms of the M&S Agreement provide some support for the Commissioner's concern about the relationship between Advance America and BankWest. Advance America receives the majority of the fee or interest charged on each loan and retains almost all of the risk of loss on each loan. Advance America also agrees to indemnify BankWest for claims relating to the loans where BankWest is named and Advance America and not BankWest is found to have violated the law; BankWest does not indemnify Advance America for reciprocal claims. The Commissioner also introduced evidence showing that Advance America offers loans in its own name in Florida, where payday lending is legal, but that it affiliates with an out-of-state bank in states where payday lending is illegal, such as Georgia.

Advance America and BankWest argue that, as a matter of law, any inferences that can be drawn from the M&S Agreement or Advance America's activities in other states do not transform Advance America into the lender on BankWest's loans. They rely on *Hudson v. ACE Cash Express*,[21] an unpublished opinion in which the court dismissed a complaint that challenged a payday lending arrangement between ACE Cash Express and Goleta National Bank. The plaintiff claimed that ACE was the real lender and was therefore subject to Indiana's usury laws. Rejecting a substance over form analysis, the court held that Goleta was the true lender despite the fact that ACE was required to purchase a 95 percent participation interest in loans Goleta made to ACE's customers.

---

Ga. App. 632, 633 (585 SE2d 924) (2003).

[18] Id. at 634 (citing *Colorado v. ACE Cash Express*, 188 FSupp.2d 1282, 1285-1286 (D. Colo. 2002); *Long v. ACE Cash Express*, 2001 U. S. Dist. LEXIS 24617 (M.D. Fla. 2001); *Goleta Nat. Bank v. Lingerfelt*, 211 FSupp.2d 711 (E.D. N.C. 2002)).

[19] We note that both houses of the Georgia Legislature recently passed Senate Bill No. 157, which addresses payday lending and, more specifically, how to determine if an agent should be considered a de facto lender. That bill is currently awaiting the Governor's signature.

[20] That statute provides that parties to a contract may adopt the law of another forum for purposes of determining how the contract shall bear interest.

[21] 2002 U. S. Dist. LEXIS 11226 (S.D. Ind. 2002).

We do not find *Hudson* persuasive because Georgia courts apply a different analysis to the examination of an allegedly usurious transaction. To determine if a contract is usurious, we critically examine the substance of the transaction, regardless of the name given it,[22] or, stated another way, "[t]he theory that a contract will be usurious or not according to the kind of paper bag it is put up in, or according to the more or less ingenious phrases made use of in negotiating it, is altogether erroneous. The law intends that a search for usury shall penetrate to the substance."[23]

2. Relying on the same arguments addressed in Division 1, Advance America and BankWest claim that the trial court erred by denying their motion for summary judgment. For the reasons set forth in Division 1, we find that the trial court properly denied the motion for summary judgment filed by Advance America and Bank-West.

3. Advance America and BankWest claim that the trial court erred by dismissing their declaratory judgment action in which they challenged the Commissioner's use of Ga. Comp. R. & Regs. r. 120-1-2-.14, which sets forth the procedure to be followed by the Commissioner when he seeks to discover violations of GILA. They rely on OCGA § 50-13-10 (a), which is part of the Georgia Administrative Procedure Act, and which provides that

> [t]he validity of any rule . . . may be determined in an action for declaratory judgment when it is alleged that the rule . . . or its threatened application interferes with or impairs the legal rights of the petitioner. A declaratory judgment may be rendered whether or not the petitioner has first requested the agency to pass upon the validity of the rule . . . in question.

The trial court cited four reasons for its ruling: (1) Advance America and BankWest failed to demonstrate the existence of an actual or justiciable controversy; (2) declaratory relief is not available when entities' rights have already accrued and they merely wish the courts to confirm the legality of their decision; (3) the parties have not taken adverse positions on any issue and (4) a declaratory judgment action is not appropriate where activity that is alleged to be criminal has already taken place.

We review the trial court's ruling on a motion to dismiss under

---

[22] *Tribble v. State*, 89 Ga. App. 593, 596 (2) (80 SE2d 711) (1954); see also *Williams v. Powell*, 214 Ga. App. 216, 219 (2) (447 SE2d 45) (1994) (physical precedent) (any contrivance to evade usury laws and enable lender to get more than legal interest will render transaction usurious; courts look to actual nature of transaction, not form parties have given it).

[23] *Pope v. Marshall*, 78 Ga. 635, 640 (2) (4 SE 116) (1887).

the de novo standard of review.[24]

Declaratory judgment actions brought pursuant to OCGA § 50-13-10 "shall be in accordance with Chapter 4 of Title 9, relating to declaratory judgments."[25] Superior courts are authorized to issue declaratory judgments in cases of actual controversy and

> to determine and settle by declaration any justiciable controversy of a civil nature where it appears to the court that the ends of justice require that such should be made for the guidance and protection of the petitioner, and when such a declaration will relieve the petitioner from uncertainty and insecurity with respect to his rights, status, and legal relations,[26]

but not when the declaratory judgment is merely advisory.[27]

Despite their artful pleading and carefully worded arguments here, Advance America and BankWest really challenge the Commissioner's authority to investigate Advance America for violations of GILA under OCGA § 7-3-22, not the procedure by which that authority is to be carried out, as set forth in Ga. Comp. R. & Regs. r. 120-1-2-.14. As we held in Division 1, OCGA § 7-3-22 does give the Commissioner the authority to investigate Advance America for violations of GILA. To the extent Advance America and BankWest seek a ruling that Advance America is exempt from an administrative enforcement action, such a ruling would be merely advisory as the Commissioner has not initiated any such action[28] and has not made a determination about whether such an action would be authorized.[29] In addition, the Commissioner admits that he has no authority to regulate and has made no attempt to regulate BankWest's activities. Accordingly, the trial court properly dismissed the declaratory judgment action.

4. Based on the same arguments addressed in Division 1, Advance America and BankWest claim that the trial court erred by refusing to quash the Commissioner's administrative subpoenas. For the same reasons set forth in Division 1, we find that the trial court did not err by refusing to quash the subpoenas.

---

[24] See *Cook v. Regional Communications*, 244 Ga. App. 869, 870 (539 SE2d 171) (2000).

[25] OCGA § 50-13-10 (c).

[26] (Citation and punctuation omitted.) *Baker v. City of Marietta*, 271 Ga. 210, 213 (1) (518 SE2d 879) (1999); OCGA §§ 9-4-1; 9-4-2.

[27] *Liner v. City of Rossville*, 212 Ga. 664 (1) (94 SE2d 862) (1956).

[28] See *Burton v. Composite State Bd. of Med. Examiners*, 245 Ga. App. 587, 589 (538 SE2d 501) (2000).

[29] See *Goleta Nat. Bank v. O'Donnell*, 239 FSupp.2d 745 (S.D. Ohio 2002).

5. Finally, Advance America and BankWest claim that the trial court erred by refusing to seal portions of a hearing transcript that they contend were covered by the court's protective order.[30] For purposes of considering this appeal, we ordered the requested pages sealed. The information disclosed on those pages was covered by the protective order — it contained specific numbers obtained from the M&S Agreement that were to be disclosed only under seal.

In Case No. A03A2357, infra, we hold that the protective order must be reversed. If, after complying with the requirements of Uniform Superior Court Rule (USCR) 21, the trial court determines that the documents at issue in Case No. A03A2357 should remain sealed, these transcript pages should also remain sealed. If the trial court determines that public access to the documents at issue in Case No. A03A2357 should not be limited, these transcript pages shall be unsealed.

## Case No. A03A2357

6. The Commissioner appeals the trial court's decision to grant the motion for protective order filed by Advance America and Bank-West, which required that certain documents be filed under seal, and its later ruling that the protective order would remain in effect until further order of the court. Because the trial court failed to follow the required procedures for allowing court records to be sealed, we reverse.

USCR 21 states that "[a]ll court records are public and are to be available for public inspection unless public access is limited by law or by the procedure set forth below." A superior court may grant a civil litigant's motion for limited access to court files in a particular action, after conducting a hearing on the motion.[31] "The order of limitation shall specify the part of the file to which access is limited, the nature and duration of the limitation, and the reason for limitation."[32] "An order limiting access shall not be granted except upon a finding that the harm otherwise resulting to the privacy of a person in interest clearly outweighs the public interest."[33]

At the hearing on the motion for protective order, the trial judge stated that she was granting the motion so that, until she made a decision on the motions for summary judgment, she and the Commissioner would have full access to the documents BankWest and

---

[30] The pages at issue are pages 62-64 of the January 24, 2003 summary judgment hearing transcript.

[31] USCR 21.1.

[32] Id.

[33] USCR 21.2.

Advance America wanted sealed. She stated that the documents would be sealed only until she ruled on the motions for summary judgment. In the court's Final Order and Judgment, the court, without making any findings of fact or conducting another hearing, ruled that the protective order would remain in effect under further order of the court.

The trial court failed to comply with the requirements of USCR 21 when initially entering the protective order and when ruling that the protective order should remain in effect because in neither instance did the court make a "finding that the harm otherwise resulting to the privacy of a person in interest clearly outweighs the public interest."[34] And we cannot infer from the record that the trial court made such a finding.[35]

Advance America and BankWest had the burden of proving that their privacy interests outweighed the public interest in having access to the documents at issue.[36]

> Correspondingly, the trial court is obligated to weigh the harm to the party's privacy interest that will result from not sealing the records against the harm to the public's right of access that will result from sealing the records. Before it is authorized to seal court records, the trial court must make factual findings which lead it to conclude as a matter of law that the former clearly outweighs the latter.[37]

Because the trial court made no such findings at any time, we must conclude that the Protective Order, filed on November 22, 2002, and that part of the Final Order and Judgment, filed on February 19, 2003, which allows the Protective Order to remain in effect, must be reversed.[38] This matter is remanded to the trial court for proceedings consistent with this opinion.[39]

*Judgment affirmed in Case No. A03A2356. Judgment reversed in Case No. A03A2357 and case remanded. Ruffin, P. J., and Ellington, J., concur. Blackburn, P. J., disqualified.*

---

[34] Id.

[35] *In re Motion of The Atlanta Journal-Constitution,* 271 Ga. 436, 437 (519 SE2d 909) (1999).

[36] See id.

[37] (Footnote omitted.) Id. at 438.

[38] See id.

[39] See id. at 439.

DECIDED MARCH 22, 2004 —
RECONSIDERATION DENIED APRIL 6, 2004 —

*Troutman Sanders, Alan W. Loeffler, Martin M. Wilson, McKenna, Long & Aldridge, Robert A. Bartlett, James T. Mast, Larry D. Floyd, Jr.*, for appellants.

*Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Sidney R. Barrett, Jr., Senior Assistant Attorney General, Elizabeth J. Simpson*, for appellee.